## PENNSYLVANIA IRON WORKS COMPANY, Respondent, v. EAST ST. LOUIS ICE & COLD STORAGE COMPANY, Appellant.

**St. Louis Court of Appeals, November 25, 1902.**

1. **Arbitration: DISCRETION OF ARBITRATORS: EVIDENCE: PRACTICE, TRIAL: RIGHTS OF COUNSEL.** It is within the sound discretion of the arbitrators to hear or refuse to hear counsel.

2. ——: ——: ——: ——: **AWARD.** And the award of arbitrators should not be set aside for the refusal to hear counsel unless it clearly appears that a party is prejudiced thereby.

3. ——: ——: ——: ——: **WAIVER OF COUNSEL.** In the case at bar, there was clearly a waiver by defendant of assistance of counsel, and it can not, after the award has been made, move to

set it aside for the refusal of the arbitrators to do that, the performance of which, it waived before the hearing had commenced.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

Plaintiff company and defendant company, corporations, agreed to arbitrate certain matters in dispute between them and in pursuance of the agreement executed the following articles of submission, to-wit:

"This agreement, made and entered into this twenty-sixth day of July, 1899, by and between the Pennsylvania Iron Works Company, a corporation, organized under the laws of Pennsylvania, and located at Philadelphia, Pennsylvania, party of the first part, and the East St. Louis Ice & Cold Storage Company, a corporation, organized under the laws of Illinois, and having a business office in the city of St. Louis, State of Missouri, party of the second part, witnesseth:

"Whereas, said parties on or about the first day of March, 1898, entered into an agreement in writing, of which one copy is hereto annexed, and wherein said first party agreed to furnish and erect for said second party at its ice plant in East St. Louis, Illinois, one two-hundred-ton refrigerator machine and ammonia condenser, in accordance with the specifications hereto attached, for the sum of fourteen thousand, two hundred and fifty dollars, payable as in said contract provided, and

"Whereas, said first party claims that it did furnish and erect said machine and condenser, and did comply with all covenants and agreements, on its part as in said contract required, and said party of the first part claims that there is now due it from said second

## OCTOBER TERM, 1902.  565

Penn. Iron Wks. Co. v. Ice & Cold Storage Co.

party the sum of $3,817.86 upon said contract price, after deducting all payments, credits and offsets to which said second party is justly entitled; and

"Whereas, said second party denies that said first party did furnish and erect said machine and condenser, as in said contract required, and denies that said first party has complied with all covenants and agreements on its part in said contract contained, and denies that it is indebted to said first party in any sum whatever, and said second party also claims that it has fully paid said first party all sums to which it is justly entitled under said contract, and claims that said first party is indebted to it, the second party, by reason of said first party's violation of certain covenants and agreements in said contract contained, which claims are more particularly itemized as follows:

"1. Said second party claims that said first party failed to furnish and put up a 24-inch steam cylinder as in said contract required, but furnished only a 22-inch cylinder, against the protests of said second party, and said first party is therefore indebted to said second party for the reasonable cost of furnishing such 24-inch cylinder.

"2. That said first party, through its servants and agents, so carelessly erected and put up said machine and condenser and pipe connected therewith, that the same on the third day of September, 1898, broke down and caused a loss of 10,725 pounds of ammonia, worth eighteen cents per pound, and thereby said second party sustained a further loss and damage of $1,936.50, for which sum said first party is also liable and indebted to said second party.

"3. And that said first party failed to have said machine and condenser in condition ready to do work by June 1, 1898, as in said contract required, and that the first party delayed the completion of said machine for at least ninety days after deducting and allowing for all delays caused by fire, or labor strikes, or acts of God, and all delays caused by said second party, and by reason of such delay on the part of the first

party, and by reason of such violation of the covenants on its part said first party is further indebted to said second party in the sum of $9,000, being at the rate of $100 for each and every day's delay as in said contract provided; and whereas said second party has claimed all these various set-offs and counterclaims, and said first party has disputed and denied its liability therefor; and

"Whereas, said parties desire to avoid the expense and annoyance of litigation, and desire to submit all matters in controversy as aforesaid to arbitration, as is hereinafter provided, it is therefore agreed by and between them as follows:

"Said parties, the Pennsylvania Iron Works Company and the East St. Louis Ice & Cold Storage Company, do hereby submit all the matters in controversy to the arbitrament of Joseph J. DeKinder, of Philadelphia, Pennsylvania, and Minard L. Holman, of St. Louis, Missouri, and in case they, the said DeKinder and Holman, can not agree upon an award concerning all matters in controversy, then, the said DeKinder and Holman may select or appoint a third arbitrator; said arbitrators, or the majority of them (in case a third arbitrator should be selected as aforesaid) shall be the sole judges of the law and the facts applicable to the said controversy, and the undersigned parties do mutually agree to and with each other that they will stand to and abide by and faithfully keep and observe the award so to be made by said arbitrators or a majority of them, in accordance with the statutes of the State of Missouri, in such cases made and provided, and said party of the first part further agrees that it will forthwith pay to said second party any sum which may be found to be due or owing from it to said second party according to such award, and said second party agrees that it will forthwith pay to said first party any sum which may be found to be due or owing from it to said first party according to such award.

"It is further stipulated that the said arbitrators shall sit and convene in the city of St. Louis, to hear

and consider the proofs to be adduced by the parties, first giving due notice to the parties of the time and place, as required by law.

"It is further stipulated that ex parte affidavits may be submitted by the parties, and the same may and shall be considered by the arbitrators as legal evidence. Nothing herein contained shall deprive either party of the right to submit depositions or oral or documentary evidence, touching the matters in controversy aforesaid.

"It is further stipulated that said first party shall bear the fees and expenses of arbitrator DeKinder and the expense of the witnesses and evidence produced by it; the said second party shall bear the fees and expenses of arbitrator Holman and the expense of the witnesses and evidence produced by it. The fees and expenses of the third arbitrator, if one should be selected by the other two as above provided, shall be equally divided between the parties hereto.

"It is further provided that the arbitrators appointed hereunder shall make and publish their award under this submission, in accordance with the statutes of Missouri, and on or before the first day of December, 1899, otherwise this submission shall be null and void; and after December 1, 1899, if no award shall have been made, either party shall have the right to prosecute any suit or action, concerning the matters in controversy aforesaid, just as if this agreement of submission had never been made.

"And the said parties do further agree that the award of the arbitrators or any two of them as aforesaid, when made, may be made a rule of the circuit court of the city of St. Louis, Missouri, and that said court may enter up judgment upon said award in accordance with the terms thereof, and of the statutes of Missouri in such case made and provided, and such action may be taken immediately after the publication of such award.

"In witness whereof, said parties have caused this submission to be executed by their proper officers, at

the city of St. Louis, Missouri, on the day and year first aforesaid.''

The arbitrators named in the submission duly qualified and gave notice of the time and place of hearing. After hearing all the evidence they made the following award, to-wit:

"We, J. J. DeKinder and M. L. Holman, to whom were submitted as arbitrators the matters in dispute between the Pennsylvania Iron Works Company of the one part, and the East St. Louis Ice & Cold Storage Company of the other part, as will more fully appear from the submission executed by said parties dated July 26, 1899, hereto annexed, and made part hereof, do make our award as follows:

"Having first been duly sworn according to law, and having also duly notified the said parties of the time and place of hearing their proofs and allegations, as will appear from the oath and notice hereto annexed and made part hereof, and having on the twelfth day of September, 1899, at 11 o'clock a. m., assembled at the Planters Hotel in the city of St. Louis, Missouri, pursuant to notice thereof to the parties and with the consent of the parties thereto, and having there heard the allegations and proofs of the parties and examined the matters in controversy, and having duly considered the same, we, the undersigned arbitrators, do now find that the East St. Louis Ice & Cold Storage Company is indebted to the Pennsylvania Iron Works Company upon its claim or cause of action in the sum of thirty-eight hundred seventeen and eighty-six one-hundredth dollars; that the Pennsylvania Iron Works Company is indebted to the said East St. Louis Ice & Cold Storage Company in the sum of . . . dollars upon said East St. Louis Ice & Cold Storage Company's first set-off or counterclaim, and in the sum of eleven hundred and seventy dollars upon its second set-off or counterclaim, and in the sum of . . . dollars upon its third set-off or counterclaim, referred to in the annexed submission, and we do therefore award and determine that said The Pennsylvania Iron Works Company shall re-

cover from said The East St. Louis Ice & Cold Storage Company the sum of twenty-six hundred and forty-seven and eighty-six one hundredth dollars, being the net amount due it after all proper credits have been deducted.

"The foregoing award shall be in full accord for all claims and demands which either of the parties has against the other arising out of the matters in controversy and submitted to us for arbitration as aforesaid."

Defendant failed to comply with the award and plaintiff moved in the circuit court of the city of St. Louis for judgment on the award. Defendant filed its motion in the circuit court to set aside the award for the following reasons:

"1. Because the arbitrators were guilty of misbehavior by which the rights of said East St. Louis Ice & Cold Storage Company have been prejudiced, in this: that the said arbitrators refused to permit the said East St. Louis Ice & Cold Storage Company to attend the hearing by its representatives and counsel, and refused to permit the said East St. Louis Ice & Cold Storage Company to cross-examine the witnesses produced at the hearing by said Pennsylvania Iron Works Company, and arbitrarily refused to permit said East St. Louis Ice & Cold Storage Company, or its counsel, to participate in the proceedings and hearing of the arbitrators, and refused to permit its counsel to make a proper presentation of the evidence and facts in its behalf. And the East St. Louis Ice & Cold Storage Company states that prior to the day fixed for the hearing of the arbitrators, it entrusted all the facts and its interests in the controversy to counsel, in the belief that counsel would be permitted to be heard in its behalf by the arbitrators, and that it was therefore unable to make a proper presentation of the facts and evidence when its counsel were excluded from the hearing. And by reason of the fact that the arbitrators, through their arbitrary conduct and misbehavior became improperly advised of the facts and the evidence,

and ignored the liability of the Pennsylvania Iron Works Company to the East St. Louis Ice & Cold Storage Company upon the matters in controversy, the award of the arbitrators is not a fair and impartial award between the parties.

"2. Because the arbitrators so imperfectly executed their powers that a mutual, final and definite award on the subject-matters in controversy submitted to them for arbitration was not made, in this: One of the matters in controversy between the parties was, whether or not the ice machine erected by the Pennsylvania Iron Works Company was erected in all particulars in accordance with the certain contract and specifications entered into between said parties on or about the first day of March, 1898; said Pennsylvania Iron Works Company claiming 'that it did erect and furnish said machine and condenser, and did comply with all the covenants and agreements on its part in said agreement required,' and claiming that there is now due from said East St. Louis Ice. & Cold Storage Company the sum of $3,817.86, upon said contract price, after deducting all payments, credits and offsets, to which said East St. Louis Ice & Cold Storage Company is justly entitled, and in said submission to arbitration, said East St. Louis Ice & Cold Storage Company denied that said iron works company 'did furnish and erect said machine and condenser as in said contract required, and denied that said iron works company complied with all covenants and agreements on its part in said contract contained, and denied that it is indebted to said iron works company in any sum whatever;' that at the time of the hearing the said East St. Louis Ice & Cold Storage Company offered to prove that said machine and condenser were not erected in accordance with the contract and specifications, and that the compressor valves and valve-stems were not made in accordance with the contract and specifications, and that one of the sections of an iron bed-plate was defective and broken, and not in accordance with the contract and specifications, contrary to the covenants

of said iron works company in said contract, and contrary also to the covenants in said contract, guaranteeing its work to be in good and perfect condition for at least one year from and after the date of the completion of the machine; all of which defects existed at the time when such valves and valve stems and bed-plate were put up by said iron works company; that, notwithstanding said facts, said arbitrators arbitrarily refused to consider the evidence offered by the East St. Louis Ice & Cold Storage Company upon that subject, and refused to consider said matters in making their award, and that said part of the controversy was not adjudicated by them, and therefore, the award, as made by the arbitrators, is not a mutual, final and definite award upon all the matters in controversy submitted to them for their arbitration.''

In support of the motion defendant's officers and counsel testified that prior to the meeting of the arbitrators defendant had employed Theodore Rassieur as its counsel and had placed in his hands a large amount of documentary evidence consisting of a contract between plaintiff and defendant in respect to the ice machine, letters and telegrams that had passed between them and had consulted with him and put him in possession of its case and had expected him to represent its interest in the hearing before the arbitrators. On the day the arbitrators were first to meet, Mr. Rassieur met Mr. DeKinder in the rotunda of the Planters House, in the city of St. Louis, and informed him that he was counsel for the defendant and would represent it before the arbitrators. Mr. DeKinder informed Mr. Rassieur that plaintiff had no counsel and that the arbitrators would not allow defendant's counsel to be in the room during their sittings. Mr. Rassieur and the representative officer of the defendant protested against this course and insisted on the right of defendant to have the assistance of counsel at the hearing of the arbitrators. Finally Mr. DeKinder said that Mr. Rassieur might be present and consult with his client but that he could not examine or cross-examine any of

the witnesses. Mr. Holman, the other arbitrator, agreed to this arrangement. Mr. Rassieur was present during the sittings of the arbitrators and freely consulted with the officers of the defendant company about its case but was denied the privilege of examining or cross-examining any of the witnesses, although he repeatedly attempted to do so. The arbitrators were requested by the officers of the defendant company to go to East St. Louis and inspect the ice machine put in by the plaintiff but they refused to do so.

In opposition to the motion to vacate the award plaintiff offered evidence tending to show that when it was proposed to Mr. DeKinder that Mr. Rassieur should be present as the counsel of defendant, Mr. DeKinder stated that plaintiff had no counsel and if defendant intended to have counsel it should have notified the plaintiff of the fact, and if defendant insisted on having counsel he would go home and there would be no arbitration; that he then consented that Mr. Rassieur might be present and talk to his client all he desired, but should not examine or cross-examine any of the witnesses; that Mr. Rassieur and defendant agreed to this arrangement and said that it was satisfactory; that with this understanding the arbitrators proceeded to hear the evidence and permitted Mr. Rassieur to be present at all of their sittings and to consult with his client, and at the close of the hearing of the evidence, offered to permit Mr. Rassieur to argue the case before the arbitrators but he declined doing so, stating at the same time that the arbitrators had been perfectly fair and he was willing to submit the case to them without argument; that the plaintiff was not represented by counsel and for this reason the arbitrators declined to let Mr. Rassieur represent defendant as such; that the arbitrators declined to go to East St. Louis and see the plant for the reason that the year of its guarantee by plaintiffs had expired before the hearing and that the condition of the plant at that time could not throw any light on the issues presented to the arbitrators for their decision. That Mr. DeKinder

was an attorney at law having an office in the city of Philadelphia and that he was also an expert engineer and that Mr. Holman, the other arbitrator, was also an engineer; that the arbitrators heard and considered all the evidence offered by defendant on its several items of counterclaim and made their award after carefully considering all the evidence, finding that plaintiff had in every respect complied with its contract in furnishing the machinery called for by the contract and keeping it in repair for one year at its own expense.

The court overruled defendant's motion to set aside the award and rendered judgment on the award. After an unsuccessful motion for rehearing defendant appealed.

*Rassieur & Rassieur* for appellant.

(1) Where arbitrators have been guilty of misbehavior, by which the rights of a party have been prejudiced, it is the duty of the court to vacate the award. R. S. 1899, sec. 4830; Haigh v. Haigh, 31 L. J. Ch. 420; Morse on Arbitration and Award, 129-130. (2) Where arbitrators refuse to permit the parties to be represented by counsel at the hearing, the arbitrators are guilty of such misbehavior, and the court should vacate the award. It makes no difference whether the other party is represented or not, or whether the other party has received previous notice or not.

*Finkelnburg, Nagel & Kirby* for respondent.

(1) An award will not be set aside for slight irregularities in the conduct of the arbitrators, if it is apparent that they acted in good faith, and that no injustice was done. Smith v. Cutler, 10 Wend. 589; Herrick v. Blair, 1 John. Ch. 101; Turnbull v. Martin, 2 Daly 428. (2) Apparently it is within the discretion of arbitrators to hear or refuse to hear counsel as they

see fit, provided the rule adopted is the same for both parties. Morse on Arbitration, p. 130; Collier v. Hicks, 2 B. & Ad. 663; Macqueen v. The Nat. Cal. Soc., 9 C. B. N. S. 793. (3) The assistance of counsel may be waived, and where a party whose counsel is excluded consents to proceed without counsel, or where, as in this case, he agrees that the hearing shall proceed without counsel to represent him, he waives the right to object to the award on that ground. Tucker v. Allen, 47 Mo. 488; 2 Am. and Eng. Ency. Law (2 Ed.), p. 667; Whitlock v. Ledford, 6 Ky. L. Rep. 387; Bennett v. Bennett, 25 Conn. 66.

BLAND, P. J.—1. The contention of appellant is that the refusal of the arbitrators to permit counsel of defendant to examine and cross-examine witnesses at the hearings was misbehavior and that the award should be vacated therefor. It was within the sound discretion of the arbitrators to hear or refuse to hear counsel. Morse on Arbitration, 130; Russell on Arbitration (3 Ed.), 166; Macqueen v. Nottingham Caledonian Society, 9 C. B. N. S. 793. And the award should not be set aside for the refusal to hear counsel unless it clearly appears that the defendant was prejudiced thereby. It appears from all the testimony that defendant's counsel was permitted to be present at all the hearings and to freely consult with his client but was denied the privilege of examining or cross-examining witnesses or to object to the rulings or proceedings of the arbitrators.

One of the issues on the counterclaim was whether or not plaintiff had complied with its contract in installing the ice plant and in having kept it in repair for one year after installation. The arbitrators were engineers and as such were certainly competent to pass on this issue without the aid of counsel. The other issues were simple ones and easily comprehended by any man of ordinary intelligence. All the evidence offered was heard and we are of the opinion that the aid of counsel was not necessary to enable the arbitra-

tors to weigh the evidence or to make a just award.

2. We think the evidence offered by plaintiff on the motion to vacate the award tends to prove that defendant waived the right (if it had one), before any hearing was had, to be represented by counsel. Mr. DeKinder's testimony clearly tends to prove a waiver of this right. True, his evidence in this particular is contradicted by evidence offered by defendant, but the issue was one submitted to the trial court and it is our duty to uphold its rulings on any theory of the case which the evidence tends to prove. If the evidence of DeKinder is to prevail, then there was clearly a waiver by defendant of assistance of counsel and it can not, after the award has been made, move to set it aside for the refusal of the arbitrators to do that, the performance of which it waived before the hearing had commenced. Allen v. Hickman, 156 Mo. 1. c. 59; Tucker v. Allen, 47 Mo. 1. c. 491; Thomas v. Heger, 174 Pa. St. 345; Bennett v. Bennett, 25 Conn. 66. Nor do we think there was any misconduct on the part of the arbitrators in refusing to go to East St. Louis and inspect the plant as it appears from the evidence that an inspection at that time could not have aided them in arriving at a conclusion as to whether or not plaintiff had complied with its contract to furnish the machine and keep it in repair for one year.

The judgment is affirmed. *Barclay,* and *Goode, JJ.,* concur in the second paragraph, and in the result.