IN RE ARBITRATION OF POPE CONSTRUCTION COMPANY, RESPONDENT, v. STATE HIGHWAY COMMISSION OF MISSOURI, APPELLANT.—92 S. W. (2d) 974.

Kansas City Court of Appeals.   April 6, 1936.

*Lewis Hord Cook* and *Gilbert Lamb* for respondent.

*Louis V. Stigall* and *Wilkie B. Cunningham* for appellant.

BLAND, J.—This is an appeal from an order vacating an award made in an arbitration proceeding between the Pope Construction Company and the State Highway Commission.

The facts show that the Pope Construction Company (hereinafter referred to as the construction company) constructed certain state highway projects in DeKalb and Andrew counties under a contract therefor with the State Highway Commission. Upon the completion of the work the construction company claimed that the State Highway Commission was indebted to it for various extra items. The matter was taken up by it with Mr. Levi, the chief construction en-

gineer for the State Highway Department. The construction company had one Charles W. Ellis prepare a claim consisting of nine items aggregating the sum of $39,903.61, which Ellis presented to Levi on March 1, 1933, and which the Highway Commission refused to pay. Thereafter, the construction company and the State Highway Commission entered into a written agreement to arbitrate the controversy.

The agreement of submission provided that the arbitration should be in accordance with Chapter 122, R. S. 1929, which relates to arbitrations; that each party should appoint one arbitrator and that the two so chosen should appoint a third arbitrator. The agreement was signed by the parties on September 1, 1933, and acknowledged by them before a notary on the 10th of November of that year. Sam H. Clelland was selected by the State Highway Commission and Charles W. Ellis by the construction company as arbitrators. Although Ellis had theretofore represented the construction company in the matter of its claim, his selection as arbitrator was agreeable to Mr. Levi. However, subsequently, Mr. Ellis refused to serve and Mr. Felix Kersting was selected by the construction company to serve in his place. These two selected a third arbitrator, Mr. Roy Jablonsky. All of the arbitrators lived in the city of St. Louis. They took the oath prescribed by the statute and hearings were had in St. Louis and a report and award were made.

The arbitrators found that the Highway Commission was indebted to the construction company in the sum of $1050.35 and they assessed the costs. The submission agreement designated the Circuit Court of Cole County as the court to which the award should be returned. Section 14023, R. S. 1929, provides that "the court designated in the submission shall, upon motion, by an order in open court, confirm the award unless the same be vacated or modified, . . . as hereinafter provided."

After the award was made the State Highway Commission duly filed its motion in the Circuit Court of Cole County, praying that the award be confirmed. The report and the award made by the arbitrators were filed with the motion. Thereafter, the construction company filed a motion to vacate the award, which was sustained by the court, and the State Highway Commission has appealed.

Both of the motions were heard by the court at the same time, the evidence admitted on behalf of each of the parties being by affidavits.

The construction company prayed the court to vacate the award for the following reasons:

"First. None of the witnesses who appeared before the arbitrators were sworn either before or after they were examined.

"Second. The stenographer who was employed to take down the testimony in shorthand was incompetent and could not and did not take down all of said testimony and transcribe the same properly

and fully, and failed to take down and transcribe a part of the material and competent testimony offered by the Pope Construction Company, and the findings of the arbitrators were based upon the testimony as imperfectly and erroneously taken down and transcribed by said stenographer. Said stenographer was selected and chosen by the arbitrator, S. H. Clelland.

"Third. The award was procured by undue means.

"Fourth. There was evident partiality and corruption on the part of S. H. Clelland, one of said arbitrators.

"Fifth. The arbitrators, and in particular S. H. Clelland, one of said arbitrators, were guilty of misconduct and misbehavior on account of which the rights of the Pope Construction Company have been prejudiced.

"Sixth. The arbitrators exceeded their powers and so imperfectly executed them that a mutual, final and definite award on the subject matter was not made.

"The Pope Construction Company further states that the aforesaid S. H. Clelland was designated and named by the State Highway Department as one of the arbitrators, and that the said Highway Department and the said S. H. Clelland have misconceived the duties of an arbitrator, and that throughout the hearings and proceedings the said Highway Department and S. H. Clelland considered the said S. H. Clelland to be in fact a representative, agent and attorney of the Highway Department, and not an impartial and fair arbitrator; and at and during the hearings held by the arbitrators the said S. H. Clelland submitted on behalf of the State Highway Department the evidence the State Highway Department desired to be offered and cross-examined the witnesses offered by the Pope Construction Company.

"Movant further states that prior to said hearings and during the times said hearings were conducted, the said S. H. Clelland came from St. Louis to Jefferson City, on at least two occasions, and consulted with the officers, agents and employees of the State Highway Department in regard to the subject matters of the arbitration, and that on said occasions the officers, agents and employees of the State Highway Department discussed with the said S. H. Clelland the matters involved, and that on account thereof the said S. H. Clelland had arrived at his decision and conclusions in regard to the merits involved in the arbitration proceedings before the hearings were held, and that the Pope Construction Company had no knowledge of any of such facts until after said hearings were held and the award was made.

"Movant states that the said S. H. Clelland was a self-designated leader of the three arbitrators, and that on account of his superior knowledge of the subject matters under submission, he influenced and predominated the other two arbitrators in their decisions and

findings and that therefore the award and findings as made were in reality those of one partial and interested agent and attorney and not those of three impartial and disinterested arbitrators.

"Movant further states that the costs assessed by the arbitrators are excessive and improper."

Section 14025, Revised Statutes 1929, provides as to how and for what cause an award may be vacated. This section reads as follows:

"Any party complaining of such award may move the court designated in the submission to vacate the same upon any of the following grounds: First, that such award was procured by corruption, fraud or undue means; second, that there was evident partiality or corruption on the part of the arbitrators, or any one of them; third, that the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear any evidence pertinent or material to the controversy, or any other misbehavior by which the rights of any party shall have been prejudiced; fourth, that the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final and definite award on the subject matter was not made."

In support of its motion the construction company introduced the joint affidavit of Joseph Pope, its president, Lewis H. Cook, its attorney and Charles W. Ellis, also the individual affidavit of Ellis. In support of its motion and in opposition to the motion of the construction company, the State Highway Department introduced a number of separate affidavits, including that of Clelland, Jablonsky, Levi and other employees of the State Highway Commission.

In order to intelligently dispose of the motion to vacate, it will be necessary to examine into the grounds on which the same is based. It is quite apparent that the third, fourth, fifth and six grounds set forth in the motion, together with the allegation in reference to the costs, are too general for consideration by the trial court or this court. In order to set aside an award the grounds upon which relief is asked should be specifically alleged and no other ground will be considered. "It is upon the party objecting to the award to show affirmatively why it should not be enforced against him, and he must state specifically the facts on which his objections are based; general averments are insufficient. Thus it is not enough to allege generally that the arbitrator was guilty of fraud, partiality, or misconduct; that he failed to pursue his authority, or was the result of a mistake." [5 C. J., p. 203.]

The first ground set up in evidence shows that none of the witnesses was sworn. There is conflict in the testimony as to why this procedure was followed. According to the affidavit filed by the Pope Construction Company this omission was at the request of Clelland, although Kersting suggested and requested that they be sworn. Clel-

land's affidavit states: "After a short discussion it was agreed by all of the arbitrators that the witnesses should not be sworn."

The affidavit of Jablonsky states: That all three of the arbitrators agreed that the swearing of the witnesses be waived. Without going into this conflict in the testimony it is necessary only to state that the undisputed testimony shows that the president of the construction company, as well as its attorney, were present and did not ask that the witnesses be sworn and made no objection to the failure to swear them. Therefore, unquestionably, the matter of the swearing of the witnesses was waived. [Grafton Quarry Co. v. McCully, 7 Mo. App. 580; Beckett v. Wiglesworth, 178 S. W. 898; Cochran v. Bartle, 91 Mo. 636; Tucker v. Allen, 17 Mo. 488; Allen v. Hickman, 156 Mo. 49.]

Relative to the second ground contained in the motion, to-wit: That the stenographer employed could not and did not take down all of the material and competent testimony and that the findings of the arbitrator were based upon testimony imperfectly and erroneously taken down and transcribed by the stenographer, the affidavit introduced on behalf of the construction company shows that Clelland decided that a stenographer be employed and that he suggested a lady, a friend of his, who was so employed. While the affidavit states the facts a little more in detail relative to the stenographer than the motion, it does not indicate what the testimony was or its character, that was not taken down, nor does it state or indicate why the testimony that was left out was needed by the arbitrators in making the award. None of the arbitrators swore that any testimony was left out that was needed and the affidavits on the part of the Highway Commission show that the lady was a competent stenographer and that she only omitted certain matters at the request of the arbitrators; that these matters consisted of "explanations made to one or more of the arbitrators by persons present as to methods, procedure and facts that were not clear to the arbitrators and discussions of the arbitrators for the purpose of enlightening each other as to the details referred to by the witnesses."

The statute does not provide for a stenographer or that an award may be set aside on account of the incompetency or even the absence of a stenographer. Aside from this, it is doubtful if the construction company's evidence was sufficient to raise any issue on the question as to whether the alleged testimony that was omitted affected the award in any particular. But however that may be, no objection was made by any of the agents of the construction company, who were present, to the stenographer or her incompetency, if any, and the matter was waived.

As to the allegation of partiality on the part of arbitrator Clelland, the evidence shows that at the time the controversy arose between the construction company and the Highway Commission, and during its pendency, Clelland was one of the assistant construction engineers

for the State Highway Department, serving under Levi; that such claims were customarily presented to the construction engineer and his two assistants, Clelland being one of them; that Clelland talked with Ellis and the president of the construction company relative to the claim and was thoroughly acquainted with it. The affidavit of Levi, submitted by the Highway Commission, states that a great many claims of this character made by contractors theretofore had been submitted to arbitration by the disputants and that it was the custom that an employee of the Highway Commission, familiar with the claim be selected as an arbitrator, "it being the opinion of the engineers and contractors that the merits of the claim can be more expeditiously and justly passed upon if on the board of arbitrators there is one or more individuals familiar with the claim and method of both the highway department and contractor; that the contractors in general in highway work and in other work seem to have confidence in the integrity, fairness and justness of the engineers representing the State; . . . that the officers and agents of the Pope Construction Company were familiar with such custom and usage at the time they entered into this contract for arbitration." There is no dispute as to this custom or the familiarity of the construction company with it. The evidence shows that the construction company had arbitrated other matters with the Highway Commission and that Kersting represented it in one of these arbitrations.

The affidavits submitted on behalf of the State Highway Commission tend to show that Clelland was not inimical to the claim of the construction company and stated to the other assistant engineer that he "would like to see the Pope Construction Company get all that was coming to it on the claim in question and wished they could find some way to allow the claim."

Clelland left the employ of the State Highway Department on September 13, 1933, and he was selected by the commission to represent it as arbitrator on the following day. The evidence on both sides tends to show that Clelland, Ellis and Kersting were not selected by the parties for the purpose of being impartial arbitrators but to represent the respective parties in the arbitration. The agreement of submission recites: "The contractor hereby appoints Mr. Felix Kersting, of St. Louis, Missouri, *as his representative and arbitrator* under this proceeding. The commission hereby appoints Mr. S. H. Clelland, of St. Louis, Missouri, *as its representative and arbitrator* under this proceeding." (Italics ours.) The agreement provides that notice of the hearing should be given both parties and that the construction company should be notified by letter addressed to "Mr. Felix Kersting, Title Guaranty Bldg., St. Louis, Missouri, for the contractor." It also provides: "Each party shall pay all costs of *its arbitrator,* attorneys or of any witness in its employ, or the production of documents under its control." (Italics ours.)

On September 14, 1933, Levi, on behalf of the highway commission, notified the construction company that the commission had selected Clelland to represent the state in the matter of the arbitration and to let him know whom the construction company expected to represent it. On September 19, the construction company replied, stating that Charles W. Ellis would *represent* it. On October 27, the attorney for the construction company notified the State Highway Commission that Ellis had advised him that he had refused to act as arbitrator and "we have decided to select Mr. Felix Kersting of Saint Louis *as the representative of the Pope Construction Company* in this arbitration matter." (Italics ours.)

The affidavit on behalf of the construction company state that Ellis refused to act as arbitrator because he was biased and prejudiced in favor of the construction company. However, the reason for his refusal was not communicated to the highway commission, nor do we think the reason therefor, whatever it was, has any substantial bearing on the controversy.

The affidavit on behalf of the construction company states that during the times said hearings were conducted the said S. H. Clelland stayed at the same hotel as did the witnesses for the State Highway Department and continuously fraternized and associated with them during the times said hearings were in progress. That when said hearings began the State Highway Department was represented by Wilkie Cunningham, one of its attorneys, and the Pope Construction Company was represented by its attorney, the affiant Lewis H. Cook, but that shortly after said hearings began the said S. H. Clelland stated that no attorneys were needed, and thereupon said S. H. Clelland proceeded to cross-examine the witnesses called by the Pope Construction Company, and he offered in evidence the testimony and documentary evidence submitted by the State Highway Department, *and Felix Kersting thereupon offered in evidence the testimony and documentary evidence submitted by the Pope Construction Company and cross-examined the witnesses called by the State Highway Department;* and that at-and during all of said hearings the said S. H. Clelland acted and conducted himself as the personal representative and attorney of the State Highway Department, and not as an impartial and fair arbitrator, although the said S. H. Clelland is not an attorney, but is an engineer by profession." (Italics ours.)

The affidavits filed on behalf of the State Highway Commission tend to show that the president of the construction company and Ellis knew of Clelland's former connection with the Highway Commission and that they discussed its claim with him. Clelland in his affidavit states that he had not, at any time, made up his mind on the merits of the claim but that Levi told him when he appointed him arbitrator "to give the Pope Construction Company the benefit of any doubt on any item of said claim where the records and fact

would justify any belief that said items were proper or meritorious;" that he told Levi that it must be understood that Clelland was to render an absolute unbiased decision.

Jablonsky stated in his affidavit that the three arbitrators agreed upon the rules of procedure before hearing the case and that "Felix Kersting would call and question witnesses for the Pope Construction Company, and that S. H. Clelland would call and question witnesses for the Missouri State Highway Commission." This evidence is not disputed.

The undisputed testimony shows that the agents for the construction company not only knew of Clelland's former connection with the Highway Commission and that he was acquainted with the claim and had it under consideration when he was in its employ, but that its agents and attorney were present at all times during the hearings conducted by the arbitrators and made no objections whatever to what went on but, on the contrary they participated in the proceedings by assisting Kersting, its representative, in looking after its interests.

The testimony taken at the hearings was introduced in evidence and is included in the abstract filed here by the appellant and it shows that Clelland and Kersting followed the understanding had, that is, that Clelland would call and question witnesses for the State Highway Commission and that Kersting would do the same for the construction company. One of the rules of procedure agreed upon by the arbitrators was that neither party should be represented by counsel. The undisputed evidence shows that the attorney for the construction company or its officers or both conferred with Kersting before and during the hearings, furnished him with information that it desired to be presented to the arbitrators and acquainted him with its case; that both Kersting and Clelland examined and cross-examined the witnesses on behalf of the parties who selected them as arbitrators and on occasion made unfavorable comments on the testimony and the character of some of the witnesses. An examination of the record would indicate that perhaps Kersting was a better hand in these matters than Clelland.

The various items constituting the claim of the construction company amounted in all to nine and they were ruled upon separately by the arbitrators. Clelland did not dissent to any of the allowances to the construction company. Kersting dissented to several rulings and in each instance the ruling was against the construction company and at no time did he dissent when the finding was made in its favor.

The affidavit filed by the construction company, itself, states that Kersting offered the testimony and documentary evidence submitted by the construction company and cross-examined the witnesses called by the State Highway Department. He could have hardly done these

things without preparation and consultation with the construction company and there was other undisputed testimony that it helped him prepare its case in advance and prompted him and furnished him documents during the hearings. Of course, this procedure on the part of Clelland and Kersting was to be expected, in view of the agreement of submission, which provides that Kersting was appointed as the *representative* of the contractor or the construction company and Clelland as the *representative* of the Highway Commission and that each party should pay all the costs of *its arbitrator* and that notice to the construction company of the hearings should be given to Kersting. Consequently, no criticism is made or should be made against either of the arbitrators in this respect.

It is true, as the construction company contends, that the law requires that arbitrators shall not act as the special representatives of either party but to sit in judgment upon the matter submitted to them and impartially and fairly determine it and that they are to be regarded as the agent of both parties alike so as to act without fear or favor. This the law contemplates but the law cannot insure impartial arbitrators when the parties do not want them. Where, as here, each party appointed arbitrators to represent him and saw to it that he did so, there is no relief that the courts can or should try to give. It is well said in Fox v. Hazelton, 27 Mass. 275, 277:

"If parties really intend to have their rights decided by impartial judges, they are entitled to insist that all shall be impartial.

"But *volenti non fit injuria*. If the parties are content to submit questions in controversy to those, who are known to have formed and expressed opinions upon the subject matter, or who are known to have partialities and prejudices for or against the respective parties, an award made by such arbitrators is binding." [See, also, Wheeling Gas Co. v. City of Wheeling, 5 W. Va. 448; Duvall v. Sulzner, 155 Fed. 910; Thompson v. Charles County, 227 Mo. 220, 233; Williams v. Chi. S. F. & C. Ry. Co., 112 Mo. 463.]

Aside from this, the agents of the construction company and its attorney were present at the hearing and their principal cannot now be heard to complain after the award has gone in a manner unsatisfactory to them, when they sat by and, in fact, participated and took the chances of obtaining a favorable award.

"Notwithstanding the existence of facts which may influence the judgment of an arbitrator, if a party, with knowledge of such facts, submits his case to the decision of such person, the objection is waived, and the same rule obtains where a party has agreed to submit to arbitration without knowledge of such facts, and afterward, during the progress of the hearing, obtains knowledge thereof and proceeds, without objection, to the making of an award. The principles above stated apply whatever may be the character of the objection. Thus they have been applied when the objection was that the person selected

as arbitrator had formed an opinion upon the merits of the controversy; that he had had business relations with a party to the submission; that he was related to the party in favor of whom the award was made; that he had an interest in the subject matter of the submission; or that he was a party to the submission.'' [5 C. J., pp. 66, 67.]

"If a party with knowledge of an irregularity in the proceedings continues, without objection, to take part in the proceedings, he waives any objection on account of such irregularity. He cannot thus take the chance of a favorable issue.'' [5 C. J., p. 101.]

"Where a party having knowledge of the fraud, misconduct, or partiality allows the arbitrators to proceed without objecting on that account, he is deemed to have waived the objection.'' [5 C. J., p. 192.]

[See, also, Hinkle v. Harris, 34 Mo. App. 223; Sweeney v. Vaudry, 2 Mo. App. 352; Ledlie v. Gamble, 35 Mo. App. 355; Dickens v. Luke, 2 S. W. (2d) 161; Cochran v. Bartle, supra; Tucker v. Allen, supra; Allen v. Hickman, supra; Leitch v. Miller, 40 Mo. App. 180; Pa. Iron Works Co. v. Ice & Cold Storage Co., 96 Mo. App. 563; Fernandes Grain Co. v. Hunter, 217 Mo. App. 187, 198.]

In the motion to vacate it is charged that Clelland was the self-designated leader of the three arbitrators and on account of his superior knowledge of the subject matter under submission he influenced the other two arbitrators, etc. In reference to this charge the facts stated in the affidavit for the construction company are no broader than the charge  However, as before stated, the testimony taken at the hearings is before us and while it may show that Clelland was, perhaps, the most forceful character of the three arbitrators, there is no evidence anywhere in the record that he influenced or controlled the other two arbitrators, other than the mere conclusion stated in the affidavit filed on behalf of the construction company. There is no claim on the part of the other two arbitrators that they were unduly influenced but on the other hand Clelland's affidavit states that Kersting said before Clelland and Roy Jablonsky at their meeting to make their award, in substance, that he had done his best for the construction company and that he had practically no facts, figures or documents to substantiate its claim. This evidence as to Kersting's statement is undisputed. At any rate the construction company has only itself to blame if Clelland proved to be the best man for the reason that it agreed that the Highway Commission should select Clelland as its representative.

Bearing on the absurdity of the situation is Clelland's affidavit which states that the president of the construction company said to him after adjournment in the evening on the first day of the hearing: "Mr. Clelland, I wish that you had been representing us instead of Mr. Kersting. Your method of presentation is so much clearer than that of our man.'' This testimony is undenied. In addition,

as before stated, even if it could be said that Clelland were guilty of any misconduct during the hearing no objection was made on the part of the construction company or its officers or agents and the matter was waived.

As to the allegation in the motion to vacate the award that Clelland went from St. Louis to Jefferson City at least on two occasions to consult with officers of the Highway Commission and discussed with them the matters involved in the arbitration and that on account thereof Clelland arrived at his decision in regard to the merits of the case before the hearing was held, the affidavit on behalf of the construction company wholly fails to substantiate this charge. It would appear from the affidavit that the only thing this charge is based upon was an expense account rendered by Clelland to the State Highway Department, which shows two trips made by him from St. Louis to Jefferson City for the purpose of conferring with Mr. Levi. What they conferred about is not shown on the expense account. There is a general statement in the affidavit as to what was the purpose of these trips, as stated in the motion, but they are by way of conclusions and no statement is made as to how the information was obtained. It is stated that information of these trips first came to the construction company after the award was made. Consequently, the affidavit is based upon hearsay.

We may say here that this is the only irregularity set forth in the motion to vacate or mentioned in the affidavit wherein it is alleged or sought to be proven that the information concerning the various irregularities complained of first came to the construction company after the hearing. That company was under the duty to allege and prove a lack of knowledge of the things complained of in order to escape the burden of having waived such things. [Ins. Co. v. Brehm, 88 Ind. 578, 572; Pearson v. Barringer, 109 N. C. 398, 401; Ledlie v. Gamble, supra.]

Evidence on behalf of the Highway Commission shows that the purpose of Clelland in making these trips was in order for him to advise with Levi as to suitable dates and place to hold the arbitration hearings. Both he and Levi testified that the latter, at no time, attempted to influence the former in the matter of the award to be made. In fact, they testified that at no time did they discuss the details of the claim. At any rate, if Clelland did discuss the details of the claim with Levi or the latter attempted to influence him, the construction company cannot complain, for the reason that it consented that he be appointed as the *representative* of the Highway Commission. These are all of the matters that can be said to be properly raised in the motion to set aside the award.

However, there are other complaints urged by the construction company in its brief. While these need not be ruled upon by us we will go into them as a matter of grace, only.

514

It is claimed that the Highway Commission and Clelland acted arbitrarily in the matter of selecting the third arbitrator. Ellis' affidavit shows that Clelland advised him, after affiant had been selected to represent the construction company, that Clelland and the Highway Commission would not consider any person as a third arbitrator except one of three persons suggested by the Highway Department, one of whom was Jablonsky. The evidence is undisputed that Levi, on behalf of the Highway Commission, did suggest three names but the letter he wrote to Clelland stated that if he and the construction company's arbitrator could not agree on any one of the three persons that they might agree upon one who would be acceptable to the Highway Commission.

Assuming, as Ellis swore, that he was notified that Clelland and the Highway Commission would not agree to any one except one of the three suggested by it, nevertheless, the construction company went ahead with the arbitration. Consequently the manner of the selection of Jablonsky was waived, conceding that it might be one that would justify the setting aside the award. The motion, itself, states that the construction company was informed by the State Highway Department of its refusal to agree on any one except the three persons suggested by it, which was, of course, before the hearing.

It is also claimed that Clelland fraternized and associated with the witnesses for the State Highway Commission, who consisted of its employees. The affidavit filed by the construction company goes no further than merely to allege that he did so. The affidavits on behalf of the Highway Commission tend to dispute this claim, but however that may be, it is undisputed that any fraternizing that was done was with the full knowledge of the construction company and its agents and it was, therefore, waived, no objections being made by it. [Noyes v. Gould, 57 N. H. 20; Allen v. Hickman, supra, 1. c. 59; Koerner v. Leathe, 149 Mo. 361, 368.] Clelland's affidavit, which was undenied in this respect, states that some of the officers and employees of *the construction company* invited and urged him to visit the hotel room occupied by them for the "purpose of a general good time and get-together;" that the other arbitrators were also invited but that he did not attend.

The agreement of submission provided that each party might be represented by an attorney but no attorney appeared, at least, directly. The affidavit filed on behalf of the construction company states that shortly after the hearing began Clelland stated that no attorney would be needed. Evidence on behalf of the state highway commission tends to show that it was agreed by all the arbitrators that neither party be represented by counsel. There is no evidence that the construction company objected to this ruling or the statement of Clelland that none would be needed or requested that it be allowed to be represented by an attorney, and if a failure to permit a party

to be represented, even after request, is one that would justify the setting aside the award, the matter was waived.

There is no misconduct alleged or claimed on the part of Clelland other than that he was a biased arbitrator, that he represented the Highway Commission in the matter of the arbitration and that he conferred with it outside the presence of the construction company or its representative. There is no charge of fraud or corruption made.

We need not go to the extent, in this case, to hold that, under no circumstances, will an award be vacated by reason of the misconduct of an arbitrator, even though it was agreed betwene the parties that he should represent one of them. It is only necessary to say that, under the circumstances in this case, whatever bias, or unfriendliness of the character that Clelland may have shown toward the claim of the construction company, was a matter invited by it, of which it cannot complain.

It is claimed by the construction company that the award of costs by the arbitrators was so unjust as to "shock a court of justice." The amount of costs assessed against the construction company was $642.20, which was to pay for the services of the arbitrator Jablonsky. These costs were assessed exactly as provided for in the agreement of submission. [Section 14043, R. S. 1929.]

It is urged that there was no exception made to the action of the court sustaining the motion to vacate the award and the motion is not presented in the motion for a new trial. The motion was a pleading in the case and was not a matter of exception. [Mo. Bridge & Iron Co. v. Pac. Lime & Gypsum, 290 Mo. 170, 175, 176; Shores v. Bowen, 44 Mo. 396; Jeude v. Sims, 258 Mo. 26, 44.] The case of Wallace v. Underwood, 32 Mo. App. 473, merely holds that there cannot be a complaint made in the appellate court of error committed in the trial of the case on the motion without a bill of exceptions.

The judgment is reversed and the cause remanded with instructions to the court to affirm the award of the arbitrators and enter judgment in accordance therewith. All concur.