**EDWARD D. JONES & CO., Appellant,**

v.

**Channing SCHWARTZ, Respondent.**

**No. WD 54211.**

Missouri Court of Appeals,
Western District.

May 26, 1998.

Lawrence R. Goldberg, Peter T. Sadowski, Goldberg, Katz, Sadowski & Croft, Thomas V. Bender, Walters Bender & Strohbehn, Kansas City, for appellant.

Mark A. Stites, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, Kansas City, for respondent.

Before EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

ELLIS, Judge.

Edward D. Jones & Co., a Missouri Limited Partnership, appeals from the trial court's grant of summary judgment denying its application to vacate an arbitration award in favor of Channing Schwartz and against Jones & Co., and confirming the award.

The record reveals that Channing Schwartz worked as a stock broker for Jones & Co. in Alliance, Nebraska. He first began working in that capacity in September, 1983. Alliance is a rural area in the Nebraska panhandle with a population of about 10,000. Jones & Co. and Schwartz did not have a written contract. However, they reached a verbal agreement in 1983 that Schwartz would have his office in Alliance, but he would also have the exclusive right to solicit clients in nearby Chadron. Further, Jones & Co. agreed it would not station any stock broker in Chadron so long as Schwartz was in the Alliance office.

During his employ with Jones, Schwartz compiled a list of 6000 names, taken from the Alliance phone book. Schwartz's wife helped him compile the list, and he kept it on a personal computer in his home. Schwartz never provided anyone at Jones with a copy of the list. Of the 6000 people on the list in May, 1994, Schwartz could identify at least 900 as customers of Edward D. Jones & Company with whom he had been doing business during the time he had been a broker with Jones & Co.

Beginning in mid–1993, general partners at Jones & Co. began indicating to Schwartz their intention to station a stock broker in Chadron. Since this was a violation of the 1983 agreement, Schwartz began to consider leaving Jones & Co. In early 1994, Schwartz received a call from someone at Jones & Co. asking him to meet with and take to dinner the individual they intended to place in Chadron. Schwartz refused and thereafter, resigned his position with Jones & Co. on April 22, 1994.

Following Schwartz's resignation, on May 2, 1994, Jones & Co. filed an action against Schwartz in Nebraska State Court alleging misappropriation of trade secrets and breach of fiduciary duty, and seeking a temporary restraining order ("TRO") which would prevent Schwartz from competing with it. On the same day, Jones & Co. obtained an *ex parte* TRO and posted a $10,000 bond as required by Nebraska law.[1] Specifically, the TRO prohibited Schwartz from the following:

(a) soliciting sales of securities and/or insurance business from any customer of Edward Jones or otherwise inducing or attempting to induce any customer of Edward Jones to terminate his/her relationship with Edward Jones, if such customer was someone whom Schwartz dealt with or even contacted or whose name became known to Schwartz while he was in the employ of Edward Jones; and further, from accepting any business from any customer whom Schwartz has so solicited, induced or attempted to induce at any time in the past for the purpose of having such customer do business with Schwartz.

(b) using, disclosing, or transmitting any books or records of Edward Jones, or any trade secrets or other confidential or proprietary information of Edward Jones, including but not limited to the names and addresses of Edward Jones' customers, its customers' financial statements, invest-

---

1. Nebraska law required Jones to either notify Schwartz or certify what efforts it made to notify Schwartz when seeking the TRO. Jones did not notify Schwartz, nor did it certify what efforts, if any, were made to notify him. Jones' attorneys admitted its chances of getting the TRO were much better if Schwartz were not present.

ments objectives, estate planning documents, and the securities held by such customers . . .

Schwartz's counsel entered his appearance in the Nebraska litigation on May 11, 1994, and on May 24, 1994, the Nebraska court dissolved the TRO. In announcing the decision to dissolve the TRO, the Nebraska court stated:

> I am not convinced that the Trade Secrets Act covers customer lists and further see *no evidence* that the defendant took anything from the plaintiff anyway.
>
> I agree with the defendant that the plaintiff is trying to have the court craft a non-solicitation agreement and further that the activity Jones complains of but has not proved is just the activity that Jones has taken in the past when they have hired a person such as the defendant from another company. What is good for the goose is good for the gander and the plaintiffs have engaged in this type of activity.
>
> Thus because of a lack of evidence, no showing that a client list is a trade secret, and further unclean hands, the Temporary Restraining Order and Protective Order are dissolved.

Thereafter, on July 12, 1994, Jones & Co.'s suit against Schwartz was dismissed without prejudice. On August 2, 1994, Schwartz filed a statement of claim against Jones with the National Association of Securities Dealers, Inc. ("NASD") requesting arbitration of his claim for damages arising out of the actions of Jones & Co. from May, 1994 through Schwartz's filing of his complaint.[2] Schwartz asserted claims against Jones & Co. for tortious interference with contract, wrongful issuance of injunction, malicious prosecution, and false light publicity. Moreover, Schwartz alleged Jones & Co. personnel stated or implied to customers that Schwartz had committed improper or illegal actions, and that Jones & Co. had an improper and ulterior motive in filing the Nebraska State Court action. Jones & Co. counter-claimed for damages only, again alleging misappropriation of trade secrets and breach of fiduciary duty.

A three-member arbitration panel heard evidence in Kansas City, Missouri on September 18–22, 1995. In addition to relaying the background of his relationship with Jones & Co., Schwartz's evidence included the testimony of an expert witness concerning the amount of damages he had suffered as a result of Jones & Co.'s actions. Mr. Howard Berg testified that Schwartz incurred damages of $1,013,280.00.

Schwartz also presented the testimony of Cheryl Novotny, one of his current customers. Mrs. Novotny and her husband had decided to invest with Mr. Schwartz at Linsco–Private Ledger (his new employer) instead of Jones & Co. because of the lower commission LPL would take on their investments. When Mrs. Novotny told John Kleager, one of Jones & Co.'s brokers, of her decision, Kleager told her to be very careful in dealing with Schwartz and that Schwartz had been fired by Jones & Co. Mrs. Novotny confronted Schwartz with the rumor, and Schwartz was able to explain the situation and retained Mr. and Mrs. Novotny as customers. Mrs. Novotny said that had she not confronted Schwartz, the things Mr. Kleager told her would have been sufficient to cause her to look for a different broker. Further, Alliance resident Larry Leiderer testified that the rumor around town, originating from people connected to Jones & Co., was that Schwartz could not deal with any of his former customers because he had breached his contract with Jones & Co.

On November 3, 1995, the Arbitrators rendered a unanimous award which generally identified the parties, when the claims and pleadings were filed, when hearings were held, a summary of the claims made by the parties and the relief requested, and ultimately the award itself, which stated:

> After considering the pleadings, the testimony, and the evidence presented at the hearing the post-hearing submissions, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

**2.** Jones & Co. is a member of the NASD. Members agree that all disputes are subject to arbitration through the NASD. Thus, the parties were compelled to arbitrate.

Respondent Edward D. Jones & Company is liable for, and shall pay to the Claimant the sum of $745,638.00 as satisfaction for his claim for compensatory damages.

All other claims for relief/requests for damages not specifically set forth herein, are, and each of them, denied and dismissed with prejudice.

Each party shall bear its own costs and expenses associated with this arbitration.

The panel did not specify the basis for its decision.

Jones & Co. filed an application to vacate the arbitration award in the Circuit Court of Jackson County. Both Jones & Co. and Schwartz filed motions for summary judgment. Upon review, the trial court entered judgment granting Schwartz's motion for summary judgment, including confirmation of the arbitration award, and denying Jones & Co.'s motion for summary judgment. From that judgment, Jones & Co. perfected this appeal.

Appellate review of summary judgment is *de novo. Rice v. Hodapp,* 919 S.W.2d 240, 243 (Mo. banc 1996). We review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The party moving for summary judgment has the burden of establishing that it is entitled to judgment as a matter of law. *Id.* at 382. In conducting the review, this court determines "whether there is genuine dispute as to material facts and whether there is an undisputed right to judgment as a matter of law." *Jamieson v. Jamieson,* 912 S.W.2d 602, 604 (Mo.App. E.D.1995).

▆▆▆ Initially, we observe that both the United States Congress and the Missouri General Assembly have enacted arbitration legislation. The Federal Arbitration Act ("FAA") is found at 9 U.S.C. § 1, *et seq.* (1970). The Missouri Uniform Arbitration Act ("Missouri Act") appears at § 435.350 *et seq.*[3] The FAA and the Missouri Act both express the goal of enforcing arbitration agreements as a matter of law "to further the important public policy of resolving dis-

putes without resort to the courts." *McCarney v. Nearing, Staats, Prelogar & Jones,* 866 S.W.2d 881, 887 (Mo.App. W.D.1993). The FAA applies when an agreement reveals a transaction "involving commerce." *Duggan v. Zip Mail Servs., Inc.,* 920 S.W.2d 200, 202 (Mo.App. E.D.1996). The United States Supreme Court has interpreted the phrase "involving commerce" as equivalent to "affecting commerce." *Id.* (citing *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 274, 115 S.Ct. 834, 839, 130 L.Ed.2d 753, 766 (1995)). Thus, the phrase has been broadly interpreted, with federal courts finding "interstate commerce involved in cases where the contracting parties resided in different states, the U.S. Postal System was used, employees crossed state lines, or materials were transported across state lines." *Duggan,* 920 S.W.2d at 202. Similarly, this court has held that the FAA applies even when all parties to the contract are Missouri residents if materials for the project are supplied by vendors outside Missouri. *McCarney,* 866 S.W.2d at 888; *Brookfield Sch. v. Tognascioli,* 845 S.W.2d 103, 105 (Mo.App. W.D.1993).

▆▆▆ In the instant appeal, Jones & Co. is a Missouri limited partnership, while Schwartz is a Nebraska resident. Jones & Co. was doing business in Nebraska through Schwartz. There can be no question that the transactions and relationship involved commerce such as to make the FAA applicable. Since we conclude that the case is subject to the FAA, we need not determine whether the Missouri Act also applies. The United States Supreme Court has declared that the federal act preempts any state act when both are applicable. *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1, 15–16 (1984). Nonetheless, we are not bound by the procedural provisions of the FAA and may apply Missouri procedural rules when arbitration is pursuant to the FAA. *Duggan,* 920 S.W.2d at 203. However, Missouri procedural rules may not be applied to defeat substantive rights granted by the FAA. *Id.*

▆▆▆ In reviewing arbitration proceedings, appellate courts will not consider claims

---

**3.** All Missouri statutory references are to RSMo 1994 unless otherwise noted.

that arbitrators committed factual or legal errors, as they would in reviewing decisions of lower courts. *Shop 'N Save Warehouse Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 61 F.3d 632, 634 (8th Cir.1995). The party challenging the award is not entitled to have a reconsideration of the merits and bears the burden of demonstrating the invalidity of the award. *Holman v. Trans World Airlines*, 737 F.Supp. 527, 530 (E.D.Mo.1989); *Estate of Sandefur v. Greenway*, 898 S.W.2d 667, 670 (Mo.App. W.D.1995). "Arbitration proceedings are preferred by the courts which give every favorable intendment in favor of the award, so judicial review of arbitration awards is strictly limited." *Estate of Sandefur*, 898 S.W.2d at 669. Arbitration is a useful alternative method of dispute resolution; it is not simply a preliminary and burdensome step in the march through the court system. *Id.* at 669–70.

■ Jones & Co. first contends the trial court erred in granting Schwartz's summary judgment motion and that the award should be set aside because the arbitrators exceeded their powers in violation of § 10 of the FAA. It asserts that under both Missouri and Nebraska law, one who obtains an injunction which is subsequently dissolved incurs no liability except on the bond unless the action is one for malicious prosecution. It contends Schwartz's evidence proved only that he was damaged by the issuance of the TRO and did not establish the elements of an action for malicious prosecution. Consequently, Jones & Co. reasons that Schwartz had no cause of action upon which an award could have been rendered, and therefore, the arbitrators "exceeded their powers" by rendering an award. Based on the same reasoning, Jones & Co. secondarily contends the award is in manifest disregard of the law.

■ Jones & Co.'s argument is wholly devoid of merit. While it is true that § 10(a)(4) of the FAA provides that an award may be vacated "[w]here the arbitrators ex-

ceeded their powers," the provision is inapplicable even if we accept, *arguendo*, Jones & Co. reasoning. Arbitrators exceed their power or jurisdiction only "by deciding matters which were beyond the scope of the arbitration agreement or which clearly were not submitted to them." *Holman v. Trans World Airlines, Inc.*, 737 F.Supp. 527, 530 (E.D.Mo.1989) (interpreting § 435.405). Thus, an award can be vacated under 9 U.S.C. § 10(a)(4) as being in excess of the arbitrators' powers only if the claims decided by the arbitrators fall outside the scope of the arbitration agreement, *DVC–JPW Investors v. Gershman*, 5 F.3d 1172, 1174 (8th Cir.1993); or were not submitted to them. *Holman*, 737 F.Supp. at 530.

In the case at bar, appellant offers no evidence or argument that the arbitrators decided matters not submitted to them. Schwartz's statement of claim alleged Jones & Co. committed tortious interference with contract, wrongful issuance of injunction, malicious prosecution, and false light publicity. The arbitration award noted the existence of several of these claims and entered judgment in favor of Schwartz in satisfaction of his claim for compensatory damages. There is nothing in the record that indicates the panel exceeded its power by deciding an issue not submitted to it.

■ Secondarily, Jones & Co. argues the award was in "manifest disregard of the law." Neither § 10 of the FAA, nor § 435.405 of the Missouri Act authorize vacating an award because it was made "in manifest disregard of the law." However, it became a judicially created basis for vacating an award made pursuant to the FAA by virtue of the United States Supreme Court's decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).[4] Nevertheless, Missouri courts reject the concept as a basis for setting aside an award made pursuant to the Missouri Act. In *Stifel, Nicolaus & Company v. Francis*, 872 S.W.2d 484 (Mo. App. W.D.1994), this court declared that

4. *Wilko* was overruled by *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). However, it appears that it was overruled on other grounds and the concept of "manifest disregard

of the law" as a basis for vacating an arbitration award made pursuant to the FAA remains viable. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

"[t]he judiciary is limited to vacating an arbitration award only on those grounds set forth in the statute [§ 435.405]." *Id.* at 486. "Manifest disregard for the law is not a statutory basis for vacating an award." *Id.*

 As noted earlier, the FAA applies to the case *sub judice*, and therefore, we apply federal substantive law while utilizing Missouri procedural rules.

Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Wilkes v. Missouri Highway & Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988). Clearly the provisions § 10 of the FAA and the body of federal case law applying the judicially created manifest disregard of the law standard for vacating arbitration awards are substantive law in that they create, define and regulate rights. "The effect of the [Federal] Arbitration Act is thus to create a body of substantive federal law on arbitration...." *Foster v. Turley,* 808 F.2d 38, 40 (10th Cir.1986). Thus, while we would not consider a claim that an award was made "in manifest disregard of the law" as being a basis for vacating an arbitration award made pursuant to the Missouri Act, we will do so here because the FAA governs the instant appeal.[5]

 While federal law permits setting aside an award made in manifest disregard of the law, the application of the doctrine is severely limited. *Madden v. Kidder Peabody & Co.,* 883 S.W.2d 79, 82 (Mo.App. W.D.1994). For an award to be set aside on this basis, it must be established that the arbitrators understood and correctly stated the law but proceeded to ignore it. *Western Waterproofing Co. v. Lindenwood Colleges,*

662 S.W.2d 288, 292 (Mo.App. E.D.1983). Jones & Co. fails to make such a showing.

In the case at bar, the arbitration panel did not provide any reason for its decision, nor was it required to do so. As noted earlier, the award merely sets out the claims of both parties and announces judgment for Schwartz. The award does not state any rule of law upon which the panel made the award. It does not even specify upon which of Schwartz's claims (tortious interference with contract, wrongful issuance of injunction, malicious prosecution, or false light publicity) the award was based. Therefore, Jones cannot establish that the panel understood and correctly stated the law but then proceeded to ignore it. The award sets forth no law at all. Since Jones & Co. has utterly failed to establish the panel knew and understood the law and then chose to disregard it, it has failed to show that the panel manifestly disregarded the law. *Madden,* 883 S.W.2d at 83. Point I is denied.

 Jones & Co. next asserts the arbitration award should be vacated because one of the arbitrators (Arbitrator Patrick Hartigan) was biased and concealed his bias from the parties. It claims Arbitrator Hartigan was biased in favor of Schwartz because Hartigan's wife was a stock broker at Smith Barney, Harris, Uphan & Co., Inc. Jones & Co. claims, had it known Hartigan's wife was a stock broker at Smith Barney, it would have used a peremptory strike to remove him from the arbitration panel. Accordingly, Jones & Co. reasons the award should be set aside because the FAA, 9 U.S.C. § 10(a)(2), provides for vacation of an arbitration award where "there was evident partiality or corruption in the arbitrators, or either of them."

Jones & Co. generally makes three contentions: 1) Arbitrator Hartigan failed to disclose the fact that his wife was a broker prior to the arbitration, 2) Arbitrator Hartigan's comments to Mr. Clapp were evidence of his bias against Jones, and 3) Arbitrator Hartigan's attempt to clarify the record with re-

---

5. Even if we were to conclude that the judicially created "manifest disregard for the law" basis for vacating arbitration awards made under the FAA was procedural law, we would still be required to consider and apply the standard be-

cause Missouri procedural law cannot be applied in derogation of federal law. *Bunge Corp. v. Perryville Feed & Produce, Inc.,* 685 S.W.2d 837, 839 (Mo. banc 1985).

gard to his comment to Mr. Clapp was proof that any objection by Jones' attorneys to Hartigan's presence on the panel would have been futile.

Prior to the arbitration, each Arbitrator completed an NASD Arbitrator Disclosure Statement. Both Jones & Co. and Schwartz received copies of the Disclosure Statements. A part of the pre-printed form is designated "DISCLOSURE/CONFLICT INFORMATION." In this section, in the limited space available, Arbitrator Hartigan listed, *inter alia*, the following:

### DISCLOSURE/CONFLICT INFORMATION

| *Type* | *Description* |
| --- | --- |
| Account | Smith Barney, Harris Uphan & Co., Inc. |
| Family | Smith Barney, Harris Uphan & Co., Inc. |

Jones & Co. argues this was insufficient to put it on notice that Arbitrator Hartigan's wife was a broker at Smith Barney. While we agree that the form does not spell out the details, it nevertheless does accomplish the purpose intended, that being to provide the parties with sufficient information regarding potential conflicts to enable them to make further inquiry. The disclosure makes it clear that one of Arbitrator Hartigan's family members has some connection to Smith Barney. Jones & Co. could have made inquiry and requested more detailed and clarifying information. It did not do so. Rather it chose to accept the arbitration panel. Arbitrator Hartigan did not fail to disclose a conflict.

Jones & Co. next contends Arbitrator Hartigan exhibited his bias during his questioning of witness David Clapp:

> WITNESS: Or if you do business with Merrill Lynch where there's twenty brokers in the room, the customer walking into the Merrill Lynch office doesn't feel the same about the way their account is treated as they do when they go into a Jones office where there's just one rep and one secretary. It's—
>
> ARBITRATOR HARTIGAN: (Inaudible) licensed broker with Smith–Barney.

> WITNESS: Okay.
>
> ARBITRATOR HARTIGAN: And she makes every one of her clients believe that she is (Inaudible).
>
> WITNESS: Right.
>
> ARBITRATOR HARTIGAN: So I suggest to you that even the big off—big warehouses, that the brokers feel very strongly that the clients have a lot of—of—
>
> WITNESS: Allegiance?
>
> ARBITRATOR HARTIGAN:—allegiance to them.
>
> WITNESS: Yes, I—and I would agree and I'm—I hope that I have that feeling a year from now about my clients in Mexico, Missouri.

Later, while Jones' counsel was examining another witness regarding customer loyalty to the broker versus customer loyalty to the brokerage firm, counsel made a reference to the fact that Arbitrator Hartigan's wife was a broker. Shortly thereafter, Arbitrator Hartigan made the statement, "Just a minute. I want the record to be clear here. When I was asking Mr. Clapp questions, I did not say that my wife held that the customer's only allegiance was to her."

■ Contrary to Jones & Co.'s arguments, there is nothing in the Arbitrator's interrogation of Mr. Clapp that evinces "evident partiality" on the part of Arbitrator Hartigan. "[T]he interest or bias of the arbitrator must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative." *National Ave. Bldg. Co. v. Stewart*, 910 S.W.2d 334, 343 (Mo.App. S.D. 1995); *Sheffield Assembly of God Church, Inc. v. American Ins. Co.*, 870 S.W.2d 926, 930 (Mo.App. W.D.1994). Jones has not shown any definite bias, nor can we find any in the record, on the part of Arbitrator Hartigan. To say that Arbitrator Hartigan would have been inescapably biased just because his wife and Schwartz are members of the same profession would be sheer speculation. Moreover, there is nothing in his subsequent clarifying statement that demonstrates a lack of impartiality and it certainly cannot be considered proof that objection to

Arbitrator Hartigan's presence on the panel would have been futile.

■ The record is clear that Jones & Co. thought nothing of these matters at the time of the arbitration. It made no inquiry based on Arbitrator Hartigan's Disclosure Statement but rather, merely accepted the panel. During and after Arbitrator Hartigan's questioning of Mr. Clapp, Jones & Co. made no objection to Hartigan's presence on the panel. Likewise, it made no objection after his clarifying remarks. Indeed, it made no objection period. Accordingly, any objection Jones & Co. might have had has been waived.

> Notwithstanding the existence of facts which may influence the judgment of an arbitrator, if a party, with knowledge of such facts, submits his case to the decision of such person, the objection is waived, and the same rule obtains where a party has agreed to submit to arbitration without knowledge of such facts, and afterward, during the progress of the hearing, obtains knowledge thereof and proceeds, without objection, to the making of an award.

*Pope Constr. Co. v. State Highway Comm'n,* 230 Mo.App. 502, 92 S.W.2d 974, 980 (1936). Point denied.

The judgment of the trial court is affirmed.

All concur.