Jonathan GOLD, Plaintiff–Appellant,

v.

DEUTSCHE AKTIENGESELLS-CHAFT, Deutsche Morgan Grenfell/C.J. Lawrence, Inc., Peter Nason, and Gregory Williams, Defendants–Appellees.

Docket No. 03–7283.

United States Court of Appeals, Second Circuit.

Argued: Oct. 31, 2003.

Decided: April 21, 2004.

Joseph O. Giaimo, Giaimo & Vreeburg, LLP, Kew Gardens, NY, for Plaintiff–Appellant.

Peter L. Altieri, Epstein Becker & Green, P.C., New York, NY, for Defendants–Appellees Deutsche Aktiengesellschaft, Deutsche Morgan Grenfell/C.J. Lawrence, Inc., and Peter Nason.

Lawrence R. Sandak, Proskauer Rose LLP, Newark, NJ, for Defendant–Appellee Gregory Williams.

Before: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiff-appellant Jonathan Gold was hired by defendant-appellee Deutsche Aktiengesellschaft ("Deutsche Bank" or the "Bank") in 1995. Before beginning his employment, Gold signed various documents, including one that contained an arbitration clause requiring all employment disputes with the firm to be arbitrated. After his termination from the company approximately a year later, Gold brought the instant suit under Title VII, 42 U.S.C. §§ 2000e to e–17, and state law, claiming sexual harassment based on sexual orientation. The United States District Court for the Southern District of New York (Kimba M. Wood, J.), on defendants' motion, ordered arbitration of the dispute and then, following the arbitration proceedings, dismissed Gold's suit. Gold appeals, arguing that (1) Title VII claims cannot be subject to mandatory arbitration; and (2) the "special circumstances" of his case require reversal of the district court's order. For the reasons set forth below, we reject Gold's arguments and affirm the order of the district court.

## I. Background

### A. Gold's Employment at Deutsche Bank

While Gold was in his final year of an MBA program at New York University, he accepted a position with Deutsche Bank for employment after graduation. According to Gold, he took the job with Deutsche Bank despite offers from several other employers because Deutsche Bank assured him that he would work in a few different areas at the Bank and be groomed for positions of continually increasing authority. Gold alleges that after he began his employment in August 1995, Deutsche Bank failed to fulfill its promises. Gold, who is homosexual, alleges that once his sexual orientation was known, he was assigned to menial tasks such as purchasing chewing tobacco, fetching coffee and lunch for co-workers, and making photocopies. In April 1996, Gold was transferred to

Deutsche Morgan Grenfell/C.J. Lawrence, Inc. ("Deutsche Morgan"), a subsidiary of Deutsche Bank. Gold claims that his immediate superior at Deutsche Morgan, defendant-appellant Peter Nason, created a hostile work environment, berating Gold and making fun of him on the basis of his sexual orientation. Gold also alleges that defendant-appellant Gregory Williams, a senior employee at the Bank, subjected him to quid pro quo sexual harassment, promising Gold that he would help him with his problems at the Bank if Gold entered into a sexual relationship with him. In June 1996, Deutsche Morgan terminated Gold's employment.

### B. Gold's Title VII Claim and Arbitration

In February 1997, Gold filed his complaint in the Southern District, alleging that he had been subjected to hostile work environment and quid pro quo sexual harassment on the basis of sexual orientation in violation of Title VII.[1] Gold alleged in his complaint that at a training session prior to beginning his employment, he was required to sign numerous forms, including Form U–4, which the National Association of Securities Dealers, Inc. ("NASD") requires all "registered representatives" to sign. Form U–4, under a heading stating, "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY," provided in relevant part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm … that is required to be arbitrated under the rules, constitutions,

or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

Item 10 of Form U–4 indicated that Gold would be registered with the NASD. The NASD Code of Arbitration Procedure, Part II, § 8(a), provides for arbitration of "[a]ny dispute, claim or controversy … arising out of the employment or termination of employment of … associated person(s) with [a] member …." At the time Gold signed Form U–4, he did not challenge or question the arbitration clause. However, in his complaint, Gold claimed "lack of notice that by signing such agreement he would be waiving his right to a judicial resolution of a human rights claim."

After Gold filed his complaint, defendants-appellees moved to compel arbitration. In a written opinion filed in March 1998, Judge Wood compelled arbitration and stayed Gold's lawsuit. The judge held that an employee who had agreed to Form U–4's broad arbitration clause could be required to submit employment discrimination claims to arbitration. Judge Wood also found that Gold had not alleged sufficient special circumstances to justify holding the arbitration clause unenforceable.

In July 1998, Gold moved under Federal Rule of Civil Procedure 60(b) for reconsideration.[2] The motion asked the district court to consider recent decisions of the Ninth Circuit and the District of Massa-

---

1. Gold's complaint also included discrimination claims under the New York State Human Rights Law, N.Y. Exec. § 296, and New York Civil Rights Law § 40–c, and a claim for breach of an implied covenant of good faith and fair dealing. Judge Wood dismissed these claims when she upheld the arbitration panel's decision and ordered Gold's case closed. Gold's appeal does not discuss them.

2. Prior to bringing his Rule 60 motion, Gold filed an interlocutory appeal in April 1998. The interlocutory appeal was stayed to allow Gold to file the Rule 60 motion. After the district court denied Gold's motion for reconsideration, Gold reinstated his interlocutory appeal, which was dismissed in October 1999.

chusetts holding that Title VII claims were not subject to mandatory arbitration pursuant to the arbitration clause in Form U–4. See *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1199–1200 (9th Cir. 1998); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 995 F.Supp. 190, 204, 211 (D.Mass.1998), *aff'd on other grounds*, 170 F.3d 1 (1st Cir.1999). An affidavit submitted by Gold with the Rule 60 motion further alleged for the first time that when Gold signed Form U–4, he was brought into an office along with more than 20 other management trainees, was instructed to sign more than a dozen forms without any explanation of their content, was not given any opportunity to ask questions or review the forms and was given no more than 10 to 15 minutes to review and sign the forms.

In January 1999, the district court denied the Rule 60 motion on the ground that the two decisions relied upon by Gold went against the weight of authority in the Second Circuit that arbitration of Title VII claims was appropriate. The court also found that Gold had not alleged outright misrepresentation or other special circumstances sufficient to justify holding the arbitration clause unenforceable.

Gold proceeded to arbitration before an NASD panel. After 30 hearings, the arbitration panel concluded that Gold did not meet his burden of proving his discrimination claims against Deutsche Bank, Deutsche Morgan, Nason or Williams. In January 2003, the panel dismissed all of Gold's claims and assessed fees to each party. Gold then asked the district court to lift the judicial stay, arguing again that his Title VII claims were not subject to the mandatory arbitration provisions of Form U–4. Citing our opinion in *Desiderio v. National Association of Securities Dealers, Inc.*, 191 F.3d 198 (2d Cir.1999), which had been decided after Gold's Rule 60

motion was denied, the district court in March 2003 denied Gold's request and closed the case. Gold now appeals from that order.

## II. Discussion

■ On appeal, Gold renews his arguments that (1) Title VII claims are not subject to mandatory arbitration; and (2) in the alternative, the special circumstances of his case render the arbitration clause invalid. We review a district court's determination of arbitrability de novo. *Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co.*, 189 F.3d 289, 295 (2d Cir.1999).

### A. Arbitrability of Title VII Claims

■ In addressing Gold's claims, we note first the strong federal policy—manifested in the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.—favoring arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As we have acknowledged before, the Supreme Court, this court and other courts have all indicated that "the ancient judicial hostility to arbitration is a thing of the past." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 200 (2d Cir.1998). Indeed, the strong presumption in favor of arbitration has survived even the "greater scrutiny," *id.* at 201, given to the use of mandatory pre-dispute arbitration agreements, like the one Gold signed, to resolve statutory claims of employment discrimination. Courts have consistently found that such claims can be subject to mandatory arbitration. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("The Court has been quite specific in holding that arbitration agreements can be

enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law[.]"); *Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647 (ADEA); *Desiderio*, 191 F.3d at 203, 206 (Title VII).

Nevertheless, again relying on the Ninth Circuit's decision in *Duffield v. Robertson Stephens & Co.*, 144 F.3d at 1199–1200, Gold urges us to reverse the district court. In *Duffield*, the Ninth Circuit held that the arbitration clause in Form U–4 was unenforceable as applied to Title VII claims. *Id.* But in *Desiderio*, 191 F.3d at 205, we explicitly rejected the *Duffield* reasoning in concluding, along with the majority of other circuits, that Title VII claims could be subject to compulsory arbitration, *id.* at 206. Gold claims, however, that the factual circumstances in *Duffield*—an employee who was "unaware" of the arbitration clause in Form U–4—mirror his own situation. He argues that our decision in *Desiderio* is distinguishable.

In *Desiderio*, a bank offered the plaintiff employment as a securities broker, contingent upon her registering with the NASD and signing Form U–4. The plaintiff refused to sign Form U–4 unless the mandatory arbitration provision was stricken. When the NASD refused to alter the form, the bank revoked its offer of employment to the plaintiff. Gold contends that his case is factually different from *Desiderio* because the plaintiff there was fully aware of the arbitration clause, and refused to sign Form U–4, while Gold was not fully aware of the contents of Form U–4. But whether the plaintiff was "aware" of the arbitration clause was not dispositive in either *Duffield* or *Desiderio*. Rather, these decisions looked at the broader question of whether, in light of the FAA and

the Civil Rights Act of 1991, Title VII claims were arbitrable. We determined in *Desiderio* that they were. The Ninth Circuit itself has now come to the same conclusion and has repudiated the *Duffield* decision. *EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 749 (9th Cir.2003) (en banc). Under *Desiderio*, Judge Wood's conclusion that Gold's Title VII claims were arbitrable was clearly correct.

**B. Do Special Circumstances Justify Holding the Arbitration Clause Invalid?**

■ Gold also argues that there are special circumstances in this case that require us to hold that he is not bound by the arbitration clause. He suggests we follow the First Circuit's decision in *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999), to find the Form U–4 arbitration clause invalid in this case. In *Rosenberg*, the plaintiff had signed Form U–4, but had not been given the rules referred to in Form U–4 that listed the claims that would be arbitrated. In challenging the arbitrability of her Title VII claims, the plaintiff argued that because she had not been given the rules referred to in Form U–4, she was not aware that such claims were arbitrable. The First Circuit found that Title VII claims could be arbitrated. 170 F.3d at 11–12. Nevertheless, the court also ruled that the requirement of § 118 of the Civil Rights Act of 1991 that arbitration be encouraged "[w]here appropriate," 105 Stat. at 1081, demanded a closer look at the specific circumstances in the case. *Id.* at 8, 19–21. The First Circuit concluded that arbitration was not "appropriate" in *Rosenberg* because the defendant had certified[3] that the plaintiff would be famil-

---

**3.** Form U–4 requires the employer to sign a

statement that "at the time of approval, [the

iar with the arbitration rules referred to in Form U–4, but had not provided the plaintiff with those rules. *Id.* at 20. The court held that under such circumstances it was the defendant who should bear the risk of the plaintiff's ignorance. *Id.* at 19.

Gold argues that his position was similar to the plaintiff's in *Rosenberg* because he was not given "notice" that employment discrimination claims would be subject to mandatory arbitration. He urges that under the reasoning in *Rosenberg,* the arbitration clause in Form U–4 should not be enforced with respect to his Title VII claims.[4]

▆▆▆ We respectfully decline to follow the reasoning of the majority in *Rosenberg.* While a court may need to determine whether arbitration of Title VII claims is "appropriate" in specific instances, § 118, 105 Stat. at 1081, we think that Gold's failure to fully read and question Form U–4 before signing it undermines his claim that we should find the arbitration clause unenforceable, regardless of whether the rights he seeks to enforce spring from Title VII. Whether one can be bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S.

938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987); *see* 9 U.S.C. § 2; *see also Haskins v. Prudential Ins. Co. of Am.,* 230 F.3d 231, 239 (6th Cir.2000); *Patterson v. Tenet Healthcare, Inc.,* 113 F.3d 832, 834 (8th Cir.1997). Under such principles, in the absence of fraud or other wrongful act on the part of another contracting party, a party "who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them ...." *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416, 125 N.E. 814 (1920); *see Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 46 (2d Cir.1993); *Genesco,* 815 F.2d at 845. Thus, even if Gold did not understand the form or had questions about the arbitration clause or the rules, as he alleges, the burden was upon him to have his concerns addressed before signing Form U–4. See *Consolidated Edison Co. of N.Y., Inc. v. United States,* 221 F.3d 364, 371 (2d Cir.2000); *Rosenberg,* 170 F.3d at 23 (Wellford, J., dissenting in part). Although it may be troubling that Deutsche Bank certified that it provided Gold with the NASD rules when it had not, it was ultimately Gold's responsibility to ensure he understood the document that he signed.

---

applicant] will be familiar with the statute(s), constitution(s), rules and by-laws of the agency, jurisdiction or self-regulatory organization with which this application is being filed ...." In *Rosenberg,* as in this case, the employer had signed the form, "certifying" the applicant's familiarity with NASD rules.

4. Gold also relies on *Berger v. Cantor Fitzgerald Securities,* 942 F.Supp. 963, 967 (S.D.N.Y. 1996), in which the district court ordered discovery to determine whether the arbitration clause was unenforceable. In that case, the principal allegation was that the plaintiff had been informed that Form U–4 was a registered broker test, an outright misrepresentation. Gold has made no such allegation. Moreover, Gold's complaints that the district

court ignored other factual allegations similar to those in *Berger*—that he was given little time to fill out Form U–4 and was not provided with the NASD rules—do not justify reversal here. As noted above, those allegations were made for the first time in July 1998 in Gold's motion for reconsideration, even though Gold obviously knew the facts when he filed his complaint approximately 17 months earlier. Therefore, the district court would have been well within its discretion to disregard them. Even if we take the allegations into consideration, as we point out hereafter, Gold has not made a persuasive case for finding the arbitration clause in Form U–4 invalid.

Moreover, while it would have made sense for Deutsche Bank to have explained the form and to have provided Gold the NASD rules that were incorporated by reference, we do not find on this record that the failure to do so renders the arbitration clause invalid. Form U–4 did advise applicants (in bold, capital letters) to read it carefully. And Gold, a fully competent adult (with an MBA from a top-tier school), does not claim he could not read the print on the form, *cf. Lisi v. Alitalia–Linee Aeree Italiane, S.P.A.*, 370 F.2d 508, 513–14 (2d Cir.1966), *aff'd per curiam by an equally divided court*, 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968), or otherwise understand it. Even though Gold allegedly was not given the NASD rules referred to in the arbitration clause, the arbitration clause was broad and plain and put Gold on notice that "any dispute, claim or controversy that may arise between [him] and [his] firm" could be arbitrable.[5] *See Rosenberg*, 170 F.3d at 23 (Wellford, J., dissenting in part); *Halligan*, 148 F.3d at 201 n. 2.

Finally, to the extent that Gold argues that Form U–4 was unconscionable, we recognized in *Desiderio* that Form U–4 binds both parties to mandatory arbitration and "may not be said to favor the stronger party unreasonably." 191 F.3d at 207. "[M]ere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." *Id.* (internal quotation marks omitted).

We recognize that there may be circumstances under which courts will not enforce pre-dispute mandatory arbitration agreements with regard to statutory employment discrimination claims. *See, e.g.*, Halligan, 148 F.3d at 204 (noting that arbi-

tration was mandatory only where claimant could effectively vindicate her statutory rights in the arbitration). But given the very strong federal policy favoring arbitration and the purpose behind the FAA to "place arbitration agreements upon the same footing as other contracts," *Gilmer*, 500 U.S. at 24, 111 S.Ct. 1647, we cannot accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which Title VII claims could be arbitrated.

### III. Conclusion

In sum, Gold's Title VII claims were subject to compulsory arbitration and we see no persuasive reason why the alleged "special circumstances" justify reversing the district court. We affirm the order of the district court.

---

**5.** We note that the NASD has voluntarily amended its rules to abolish mandatory arbitration of statutory employment discrimina-

tion claims. *See Desiderio*, 191 F.3d at 201–02.