William Ramey MEAD, Jr., and Jacqueline M. Mead, Appellants/Cross–Respondents,

v.

MOLONEY SECURITIES CO., INC., Respondent/Cross–Appellant.

No. ED 91061.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 9, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 21, 2009.

William and Jacqueline Mead, Ballwin, pro se.

Kenton E. Knickmeyer, St. Louis, MO, for respondent.

Before KURT S. ODENWALD, P.J., GLENN A. NORTON, J., and PATRICIA L. COHEN, J.

PER CURIAM.

### *Introduction*

William and Jacqueline Mead, pro se, appeal the trial court's judgment denying their motion to vacate an arbitration award in favor of Moloney Securities Co., Inc. The Meads claim that the trial court erred in denying their motion to vacate because: (1) the arbitration agreement they entered with Moloney Securities was invalid; (2) the arbitrator was biased; and (3) the arbitrator manifestly disregarded the law. Moloney Securities cross appeals the trial court's denial of its motion for attorneys' fees and costs. We affirm the trial court's denial of the Meads' motion to vacate the arbitration award, but reverse the denial of Moloney Securities' request for attorneys' fees and costs. Additionally, we grant Moloney Securities' separate motion for award of attorneys' fees and costs incurred on appeal.

### *Factual and Procedural Background*

In July 2002, the Meads began working as registered representatives for Moloney Securities, a brokerage firm headquartered in St. Louis. To qualify for employment with Moloney Securities, Mr. and Ms. Mead each completed a U–4 Application for Securities Industry Registration or Transfer ("U–4 Form"), as required by state and federal law. 17 C.F.R. § 240.15b7–1 (2008); Mo.Rev.Stat. § 409.4–401(a) (2008).

By submitting the U–4 Forms, the Meads requested registration with the National Association of Securities Dealers ("NASD"), now the Financial Industry Regulatory Authority ("FINRA"), of which Moloney Securities is a member.[1] NASD Rules require, among other things, the arbitration of disputes arising from the registered representatives' employment. Accordingly, the U–4 Form contains an arbitration provision, which provides:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [FINRA] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

In addition to the U–4 Forms, the Meads signed employment contracts in which they agreed to reimburse Moloney Securities for attorney's fees and costs incurred by Moloney Securities in disputes involving the Meads or their customers.

In 2003, a number of the Meads' clients filed a NASD claim against the Meads, Moloney Securities, and Wachovia Securities, the Meads' former brokerage firm ("the client claims"). Moloney Securities settled the client claims and sought payment of its attorneys' fees and costs from the Meads. When the Meads refused to pay, Moloney Securities filed with FINRA a breach of contract action against the Meads seeking payment of its attorneys' fees and costs incurred in connection with the client claims, as well as reimbursement of a commission advance paid to Ms. Mead.

FINRA Dispute Resolution arbitrated Moloney Securities' claim against the Meads. The arbitrator, David Fingerhut, found the Meads jointly and severally liable for compensatory damages consisting of attorneys' fees and costs incurred in connection with the client claims and Ms.

1. On July 26, 2007, the NASD and the enforcement arm of the New York Stock Exchange were consolidated into one self-regulatory organization called the Financial Industry Regulatory Authority ("FINRA"). As the FINRA rules are not yet effective, the NASD Rules and Regulations apply.

Mead liable for $3,213.36 in unpaid commission charge-backs. Mr. Fingerhut ordered each party to bear its own costs and expenses, and specifically denied attorneys' fees in connection with the arbitration.

The Meads filed a motion to vacate the arbitration award, on the grounds that: (1) the U–4 Forms that they signed were invalid and unenforceable; (2) Mr. Fingerhut was biased; and (3) Mr. Fingerhut disregarded the law. In response, Moloney Securities opposed the Meads' motion to vacate, filed a motion to confirm the arbitration award, and requested further judgment against the Meads in the amount of attorneys' fees and costs incurred in arbitrating the breach of contract claim and responding to the Meads' motion to vacate. The trial court granted Moloney Securities' motion to confirm, and denied the Meads' motion to vacate and Moloney Securities' motion for attorney's fees and costs. The Meads appeal the grant of the motion to confirm and Moloney Securities cross-appeals the denial of its attorneys' fees and costs.

### Standard of Review

■ In reviewing a trial court's judgment confirming an arbitration award, we accept the trial court's findings of fact unless they are clearly erroneous, and we decide questions of law de novo. *Groceman v. Pulte Homes Corp.*, 53 S.W.3d 599, 601 (Mo.App. W.D.2001). Judicial review of an arbitration award is extremely limited. *Id.* "We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrator erred in interpreting the law or determining the facts. Rather, the contract must not be susceptible to the arbitrator's interpretation." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 462 (8th Cir.2001). (quotations omitted).

■ The Federal Arbitration Act ("FAA") sets forth the grounds for which we may vacate an arbitration award. Under the FAA, we must confirm an arbitration award unless it was "procured by corruption, fraud, or undue means," there was "evident partiality or corruption in the arbitrators," or the arbitrators were guilty of misconduct or exceeded their authority. 9 U.S.C. § 10(a) (2008). An arbitration award may also be set aside if it evidences a manifest disregard of the law. *Hoffman*, 236 F.3d at 461.

### Discussion

#### 1. Validity of the U–4 Forms

In their first point relied on, the Meads claim that the trial court erred in denying their motion to vacate because the U–4 Forms' arbitration provisions were neither valid nor binding on the Meads. Specifically, the Meads allege that their U–4 Forms were invalid because: (1) Moloney Securities altered Ms. Mead's U–4; (2) Moloney Securities failed to provide the Meads with certified copies of the completed U–4s and failed to comply with FINRA's record retention requirements; (3) Moloney Securities failed to sign and date Mr. Mead's U–4; and (4) Moloney Securities did not sign Sections 15E and 15F of the U–4s.

■ The Meads claim that Ms. Mead's U–4 Form was fraudulently altered by Moloney Securities.[2] Although their brief does not describe the alleged alteration, the record indicates that the Meads

---

**2.** This argument has not been preserved for appellate review because the Meads failed to describe the alleged alteration in their statement of facts and in the argument portion of

their brief. Supreme Court Rule 84.04(c), (e). Nevertheless, this Court, in its discretion, will consider the Meads' claim that Moloney fraudulently altered Ms. Mead's U–4 Forms.

are referring to an explanatory note in the signature block of Ms. Mead's U–4 Form. In a memorandum submitted to the trial court, the Meads alleged that Moloney Securities fraudulently altered Ms. Mead's U–4 Form by drawing a line through the date of her signature, which Ms. Mead provided as June 28, 2002, and noting next to it, "when she filled out U4."

When deciding whether a valid agreement to arbitrate exists we apply state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Under Missouri law, a party seeking relief from an alleged alteration must establish its falsity. *Otten v. Otten,* 348 Mo. 674, 156 S.W.2d 587, 589 (1941). The Meads cannot establish that the notation on Ms. Mead's U–4 Form was inaccurate because she stated in her affidavit that she did, in fact, sign the U–4 on June 28, 2002. Furthermore, "[i]t is well established that the making of a notation upon or an addition to an instrument does not constitute an alteration thereof, where there is no intent to change the effect of the instrument, but merely to make a memorandum upon it." *Shelton v. Julian,* 610 S.W.2d 129, 133 (Mo.App. S.D.1980) (citation omitted). Here, Moloney Securities' notation did not alter or attempt to alter the terms of the contract. The purpose of the notation was merely to clarify that the date provided by Ms. Mead was, the date on which she signed the application as opposed to the later date on which Moloney Securities submitted the application for processing. We therefore conclude that Moloney Securities' notation did not invalidate Ms. Mead's agreement to arbitrate.

The Meads also claim that the arbitration provisions of the Form U–4s were invalid and unenforceable because Moloney Securities failed to provide the Meads with certified copies of their completed forms and failed to comply with FINRA's record retention requirements.[3] The Meads do not attempt to explain how these alleged failures affected the validity of the arbitration agreement. They also offer no evidence that they could not otherwise obtain copies of the forms or that Moloney Securities violated FINRA's record retention rules.

A review of relevant case law reveals that an employer's failure to comply with FINRA's internal rules relating to the U–4 Form does not render its arbitration provision unenforceable. *See e.g., Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 150 (2d Cir.2004); *Ludwig v. Equitable Life Assur. Soc'y of U.S.,* 978 F.Supp. 1379, 1382 (D.Kan.1997). This is because, in the absence of fraud or other wrongdoing, a party who signs or accepts a written contract is presumed to know its contents and to assent to them. *See Warren Supply Co. v. Lyle's Plumbing, LLC,* 74 S.W.3d 816, 819 (Mo.App. W.D.2002); *see also Gold,* 365 F.3d at 149 (applying this principle to a NASD arbitration agreement). The Meads do not allege that they were unaware of the arbitration provision contained in the U–4 form. We therefore find that Moloney Securities' alleged failure to provide the Meads with certified copies of the completed forms did not affect the validity of the parties' agreement to arbitrate.

Next, the Meads claim that Mr. Mead's U–4 Form was invalid because Mo-

---

3. The Meads point to no authority supporting their claim that the alleged failures on the part of Moloney invalidate the arbitration agreement. "An appellant's failure to cite relevant authority or explain why such au- thority is not available acts as an abandon- ment of the point on appeal." *Rosehill Gardens, Inc. v. Luttrell,* 67 S.W.3d 641, 647 (Mo.App. W.D.2002). However, we will con- sider the Meads' argument *ex gratia.*

loney Securities "failed to sign and date" Section 15(B) of Mr. Mead's application. However, the record reflects that Moloney Securities electronically signed and dated this section of the U–4 Form on July 11, 2002. Federal law recognizes and gives effect to electronic signatures, 15 U.S.C. § 7001(a)(2) (2008), and the U–4 Form itself defines "signature" to include "a manual signature or an electronically transmitted equivalent." The Meads do not offer nor do we find support for their claims that an electronic signature is invalid for purposes of forming a binding and enforceable arbitration agreement or that Moloney Securities was required to inform the Meads of its intent to electronically file their applications.

 Finally, the Meads claim that the arbitration provisions are unenforceable because Moloney Securities failed to sign and date Sections 15(E) and (F) of Mr. and Ms. Mead's U–4 Forms.[4] However, as Moloney Securities correctly asserts, the party seeking to enforce an arbitration agreement need not have signed it. *R.L. Hulett & Co. v. Barth*, 884 S.W.2d 309, 310 (Mo.App. E.D.1994) ("[A]lthough a written document is not signed, when one party accepts the other party's performance, it gives validity to the instrument and imposes on the accepting party the obligations provided by the agreement."). We therefore find that Moloney Securities' failure to sign these sections did not invalidate the arbitration agreement. Point denied.

### 2. Arbitrator Bias

 In their second point relied on, the Meads claim that the trial court erred

in failing to vacate the arbitration award on the grounds of arbitrator bias.[5] Specifically, the Meads assert that the arbitrator's failure to disclose his affiliation with Financial Legacy Associates, Inc. constituted "evident partiality" requiring the trial court to set aside the arbitration award.

The FAA authorizes vacatur of an arbitration award where there was "evident partiality . . . in the arbitrators." 9 U.S.C. § 10(b). Accordingly, to prevent arbitrator bias or the appearance thereof, the law requires each arbitrator to disclose at the outset of the arbitration process any "substantial interest in a firm which has done more than trivial business with a party." *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 151–52, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968) (White, J., concurring); *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 750 (8th Cir.2003). Similarly, the NASD Code of Arbitration Procedure requires its arbitrators to disclose "any direct or indirect financial interest in the outcome of the arbitration" and any relationships "that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." NASD Code of Arbitration Procedure, Rule 10312(a)(1)–(2).

The Meads claim that the trial court erred in refusing to vacate the arbitration award because the Meads established that the arbitrator, Mr. Fingerhut, deliberately failed to disclose a business interest that rendered him partial to Moloney Securities. The Meads allege that prior to arbitration, Mr. Fingerhut disclosed only that he was a registered representative em-

---

**4.** Again, the Meads do not cite any authority for their claim or explain why none is available. Supreme Court Rule 84.04(d); *Rosehill Gardens, Inc.*, 67 S.W.3d at 647.

**5.** The Meads' appellate brief contains four points relied on. However, since the Meads'

fourth point on appeal effectively combines their second and third points, which argue respectively that the arbitrator was biased and disregarded the law, we address the recurring arguments relating to arbitrator bias in this section of our opinion.

ployed by Royal Alliance Associates, Inc., but neglected to disclose that (1) Royal Alliance was a subsidiary of AIG Group, Inc., and (2) Mr. Fingerhut was also a registered principal and controlling person of Financial Legacy Associates, Inc. The Meads do not demonstrate how either of these relationships created "evident partiality."

■ In order to show evident partiality justifying vacatur of an arbitration award, the "interest or bias of the arbitrator must be direct, definite, and capable of demonstration, rather than remote, uncertain or speculative." *Edward D. Jones & Co. v. Schwartz,* 969 S.W.2d 788, 796 (Mo.App. W.D.1998). In their brief, the Meads only discuss the financial relationships between Royal Alliance, AIG, and Financial Legacy. The Meads do not demonstrate, or even allege, that any one of these three entities had any type of relationship with Moloney Securities, nor does the record indicate that Mr. Fingerhut had any financial interest relating to Moloney Securities. *See Montez v. Prudential Sec., Inc.,* 260 F.3d 980, 984 (8th Cir.2001). The fact of Mr. Fingerhut's nondisclosure alone is not sufficient to establish interest or bias. *See Dow Corning,* 335 F.3d at 750. Point denied.

### 3. *Arbitrator's Manifest Disregard of the Law*

■ Finally, the Meads claim that the trial court erred in refusing to vacate the arbitration award because Mr. Fingerhut willfully ignored principles of contract law.[6]

■ While federal case law permits the setting aside of an award made in manifest disregard of the law, the application of this doctrine is strictly limited. *Schwartz,* 969 S.W.2d at 795. To set aside an award on this basis, the challenging party must establish that the arbitrator "understood and correctly stated the law but proceeded to ignore it." *Id.*

The Meads have failed to demonstrate that Mr. Fingerhut manifestly disregarded the law by entering the award in favor of Moloney Securities. In this case, Mr. Fingerhut did not provide a legal opinion justifying his decision. Given that the award does not state any rule of law upon which it was decided, the Meads cannot establish that Mr. Fingerhut understood and correctly stated the law yet proceeded to ignore it. *See Schwartz,* 969 S.W.2d at 795. Point denied.

### 4. *Attorneys' Fees*

■ On cross-appeal, Moloney Securities claims that the trial court erred in denying its motion for attorneys' fees and costs because Moloney Securities was entitled to recover these expenses pursuant to the parties' employment contracts, entitled Registered Representative Agreements ("Agreements").[7] The Agreements provided that the Meads shall "pay all attorney's fees and other legal costs incurred by [Moloney Securities] in disputes involving Rep-

---

6. The Meads' appellate brief contains four points relied on. However, since the Meads' fourth point on appeal effectively combines their second and third points, which argue respectively that the arbitrator was biased and disregarded the law, we address the recurring arguments relating to arbitrator misconduct in this section of our opinion.

7. For purposes of clarification, it should be noted that Moloney Securities appeals only the trial court's denial of attorneys' fees and costs at the trial level. At the trial court level, Moloney Securities moved only to confirm the arbitration award. Moloney Securities did not move to vacate the portion of the arbitration award denying attorneys' fees and costs and therefore did not preserve any challenge to that aspect of the arbitration award on appeal.

resentative or Representative's customers."[8]

■■■■■ "Where a party's claim to attorney fees is based upon a contract the court must adhere to the terms of the contract and may not go beyond it." *Trimble v. Pracna*, 167 S.W.3d 706, 714 (Mo. banc 2005). Attorneys' fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues presented in the appeal. *Bechtle v. Tandy Corp.*, 77 S.W.3d 689, 696 (Mo.App. E.D.2002).

Here, Moloney Securities' request for an award of attorneys' fees and costs is based on the parties' Agreements. There appears to be no dispute that the trial court proceeding constitutes a "dispute involving" the Meads. Accordingly, we find that the Meads were contractually required to pay Moloney Securities' attorneys' fees and costs incurred in the trial court proceedings. Because the trial court erred in denying Moloney Securities' request for attorneys' fees and costs incurred in the trial court proceeding, we remand with directions to the trial court to determine a reasonable award of attorneys' fees and costs incurred at the trial court level.

■■■■ Additionally, Moloney Securities filed with this Court a motion for award of attorneys' fees and costs incurred on appeal, which we ordered taken with case. As previously discussed, the Agreements entered by the Meads and Moloney Securities obligate the Meads to pay all attorneys' fees and costs incurred by Moloney Securities in disputes involving the Meads. Accordingly, Moloney Securities is entitled to attorneys' fees and costs incurred in this appeal, which, like the trial court proceed-ings, is a "dispute involving" the Meads. We therefore direct the trial court to determine a reasonable award of attorneys' fees and costs incurred by Moloney Securities in this appeal.

## *Conclusion*

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

---

8. In their response to Moloney Securities' cross-appeal, the Meads contend that they are not bound by this provision of the Agreements because the Agreements were modified by codicils. However, the record contains no evidence that Moloney Securities signed the codicils or otherwise consented to the modifications contained therein.