**SHOP 'N SAVE WAREHOUSE FOODS, INC., Appellee,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL NO. 88, Appellant.**

No. 94–3895.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1995.

Decided July 31, 1995.

Rehearing Denied Aug. 29, 1995.

---

Donald K. Anderson, St. Louis, MO, argued, for appellant.

Robert W. Stewart, St. Louis, MO, argued (Geoffrey M. Gilbert, on the brief), for appellee.

Before BOWMAN, Circuit Judge; HEANEY, Senior Circuit Judge; and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

The United Food and Commercial Workers International Union, Local Union No. 88 (the Union) appeals from the district court's decision setting aside an arbitrator's ruling that Sam Coffey, a Shop 'N Save Warehouse Foods employee and a union member, was terminated in violation of the parties collective bargaining agreement. We reverse the district court and sustain the arbitrator's award.

Sam Coffey, an employee of Shop 'N Save Warehouse Foods, Inc. (the Company) seriously injured his back while at work on April 16, 1992. His treating physician authorized Coffey to return to work on May 18. On August 7, 1992, the Company furnished back belts to each employee pursuant to a new company policy requiring all employees to wear back belts. By the time the belts were issued, Coffey had returned to work. Although Coffey wore the belt for a short time, he discontinued the practice because he believed the belt was aggravating his back injury.

The Company scheduled an appointment with Coffey's treating physician, Dr. Noguera. Dr. Noguera initially recommended that Coffey refrain from wearing the belt for one week. After a second examination, he returned Coffey to full duty and stated that Coffey was medically able to wear the belt. However, Coffey refused to wear the belt and cited comments made by Dr. Noguera that the belt could be harmful because it prevented full range of movement.

The Union then asked the Company to obtain another medical opinion to determine whether Coffey could wear the back belt. The Company agreed and referred Coffey to Dr. Rosenbaum, a clinical neurologist. Coffey submitted to the examination. Dr. Rosenbaum stated that Coffey could use the belt. Meanwhile, Coffey sought a third opinion from Dr. Cohen, also a neurologist. Dr. Cohen reported that the belt aggravated Coffey's condition and that Coffey did not need to wear the belt.

Coffey's refusal to wear the belt continued. As a result, the Company refused to let Coffey work and considered him to have resigned. Contending that he had been terminated without cause in violation of the collective bargaining agreement, Coffey filed a grievance with the Union. The parties were unable to resolve the grievance, and the matter was submitted to arbitration. The arbitrator determined that (1) the request for arbitration was timely; (2) the purpose of the back belt rule was personal safety, and the employee had a reasonable belief that wearing the belt was unsafe, thus failure to comply with the back belt rule is excused; (3) the grievance had not been settled by the Company and the Union, and the Company had not asked the arbitrator to enforce the settlement agreement; and (4) the back belt rule did not specify punishment for failure to abide by the rule. As a result, the arbitrator ordered that Coffey be reinstated with back pay.

The Company asked the district court to set aside the arbitrator's decision. The district court granted the Company's motion for summary judgment. The court held that the arbitrator exceeded his authority by disre-

garding the "last chance settlement agreement."

■ In view of the fact that the Company raises a single issue on appeal, we will limit our review to that issue, namely, did the Union and the Company enter into a "last chance settlement agreement." The arbitrator said no, and we accept that decision. We do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

■ The district court relied upon *Coca Cola Bottling Co. v. Teamsters Local 688*, 959 F.2d 1438 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992), in reaching its decision. Nothing in this opinion undercuts the rationale or validity of our opinion in *Coca–Cola*. However, *Coca–Cola* presented a different set of facts. In that case an employee was charged with violating three work rules. He filed a grievance, which progressed to the final level, termination. As a result of a meeting held to resolve the grievance, the employee was suspended for ten days without pay, and the parties agreed to a disciplinary notice. It read as follows:

> Notwithstanding the above discipline, please be advised that the Company considers a continuation of poor work performance, including carelessness, inefficiency, and inattention to duties to be intolerable, warranting termination of [sic] next such occurrence. Accordingly, by issuing the above discipline, the Company is not and does not waive its right to administer greater disciplinary action for similar infractions by any employee in the future.
>
> . . . .
>
> *Final Notification*
>
> Any such offense of a similar and/or like nature in violations [sic] of Category A Rules and Regulations will warrant your termination of employment with Coca–Cola Bottling Company of St. Louis.

*Id.* at 1439. The employee committed further violations of the rules, and the company terminated his employment. The matter was taken to arbitration. The arbitrator ordered the employee reinstated. The district court vacated the award, and we affirmed the district court. We stated:

> The basis for our decision is the agreement executed by the Union stewards and the Company representatives at the time [the employee] reached the fifth and final level of discipline. At this level he was subject to discharge, and the agreement, while giving him another opportunity to correct the deficiencies in his job performance, provided for his discharge in the event he did not. This agreement clearly was a "last chance" agreement, that is, a "contract[ ] between [employer] and employee to suspend disciplinary action pending a probationary period in which the employee is afforded a chance to improve his or her performance." *United States Dep't of the Air Force v. Federal Labor Relations Auth.*, 949 F.2d 475, 477 (D.C.Cir.1991). "If the employee fails to measure up as promised in a last chance agreement, the [employer] may proceed to administer the discipline earlier suspended," *id.* at 478, without reference to the collective bargaining agreement.

*Id.* at 1440.

In the instant case, the arbitrator did not ignore a last chance agreement. Rather, he questioned the existence of such an agreement. He stated:

> In essence, the Company argues that the case was settled on September 3rd. Yet if a settlement did take place, then it follows there would be some action to enforce the settlement rather than a submission asking the Arbitrator to decide whether the Grievant either voluntarily quit or was discharged for cause. In the absence of such a submission, the Arbitrator believes it more appropriate to base his holding on the limited power he derives from the bargaining agreement rather than to assume he can both adjudicate and enforce an undertaking to which he was not a party and which is outside the grievance procedure.

Award of Arbitrator, at 17, Appellant's App. at 679. Moreover, in his statement of facts,

the arbitrator did not state that a settlement agreement clearly existed. The arbitrator stated:

On August 27, 1992 the Union President talked with the Human Resources Manager and asked if another medical opinion could be secured. *Company* evidence *indicated* that the Union agreed to accept the results of the examination.

*Id.* at 4 (emphasis added).

If the arbitrator had found that a settlement agreement had been consummated and then failed to enforce that agreement, the result would be the same as in *Coca–Cola.* However, the arbitrator made no such finding. The district court cannot thereafter make its own factual findings.

We reverse and remand to the district court with directions to enforce the arbitrator's award.